## L. C. JONES, Respondent, v. ORIENT INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, November 23, 1914.

1. INSURANCE: Fire: Arbitration of Loss: Contract of Arbitrator. Suit was brought on a policy to recover loss caused by fire of an automobile. The defense was that, being unable to agree on the loss, the parties had selected arbitrators pursuant to the terms of the policy, who had made an award which defendant offered to pay. Plaintiff in reply set up fraud, bad faith and misconduct on the part of the arbitrator chosen by the company. *Held*, that an award may be disregarded if the arbitrators are guilty of bad faith, partiality or misconduct substantially affecting the result of the award, and that the evidence was sufficient to justify the jury in finding bad faith on the part of said arbitrator.

2. ———: ———: ———: Evidence of Bad Faith: Jury Question. Fraud or bad faith can rarely be proved by direct evidence expressly asserting that fact. Many times it appears only as an inference to be drawn from the acts and conduct of the persons charged therewith. And this is for the jury when there is evidence to support it.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Fyke & Snider* for appellant.

An appraiser, or the party he is representing, cannot through him blow hot and cold. He cannot remain in and conduct an appraisal, though some of the things at the time may not suit him, for the purpose of accepting the result, if satisfactory, and kicking over the award if it is not as large as he thought it would be or desired. Robertson v. Lion Ins. Co., 73 Fed. 928; Stemmer v. Ins. Co., 33 Ore. 65, 53 Pac. 498; Anderson v. Burckett, 48 Kas. 153, 29 Pac. 315.

*Charles E. Gilbert* for respondent.

In an appraisement of a loss, it is the duty of the appraisers and of the umpire if he be called in, to view and value the property, estimate the damage and conduct their proceedings in a fair, timely and business-like manner and if either appraiser acts in bad faith and by his misconduct prevents a fair and just appraisement, then the other party is not bound by an award brought about in such a manner. 19 Cyc. 789; Fowble v. Ins. Co., 106 Mo. App. 527; May on Insurance (3 Ed.), page 1139, sec. 496b; Ostrander on Fire Ins. (18292), page 459; Uhrig v. Ins. Co., 101 N. Y. 362; Davis Mfg. Co. v. Ins. Co., 210 Fed. 653; Kaiser v. Ins. Co., 59 App. Div. 525, 69 N. Y. S. 344; Home Ins. Co. v. Schiff's Sons, 64 Atl. 63, 103 Md. 648; Novak v. Ins. Co., 156 Ill. App. 352; 2 Greenleaf on Evid. (10 Ed.), page 65.

TRIMBLE, J.—Respondent sued on a policy of insurance covering an automobile which had been damaged by fire. The petition placed the damages at

$457.30. The answer admitted the fire but set up that under an appraisement and arbitration made by appraisers appointed pursuant to the terms of the policy, the damages had been appraised at $205 by which respondent was bound, and an offer was made to allow judgment to be entered for that amount. The amended reply charged bad faith and misconduct on the part of the appraiser selected by the insurance company whereby the award was rendered grossly inadequate, unfair and incomplete, and that a fair and just appraisement was not had and plaintiff for that reason ought not to be bound thereby.

The question of bad faith and misconduct were submitted to the jury and they were told that if they found from the evidence that the said appraiser had acted in bad faith and by his misconduct had prevented a fair and just appraisement of the loss, then plaintiff was not bound thereby and in that event the jury should return a verdict for the amount they found from the evidence the automobile was damaged by the fire, otherwise the jury should return a verdict for $205 the amount of the appraisement. The jury returned a verdict for $425 and the insurance company has appealed.

An award may be disregarded if the arbitrators are guilty of bad faith, partiality, or misconduct, substantially affecting the result. [19 Cyc. 879; Insurance Co. of N. America v. Hegewald, 161 Ind. 631, 1. c. 643; Fowble v. Phoenix Ins. Co., 106 Mo. App. 527; Ostrander on Insurance (2 Ed.), sec. 271.] Appellant does not controvert this proposition but contends that there was no evidence of any bad faith, partiality or misconduct resulting in an unfair and unjust award.

Fraud or bad faith can rarely be proved by direct evidence expressly asserting that fact. Many times it appears only as an inference to be drawn from the acts and conduct of the persons charged therewith and the necessary result of the misconduct charged and

shown. The question of partiality, bad faith or fraud having been submitted to the jury, its verdict must be sustained if there is substantial evidence to support it.

The terms of the policy provided that in case the insured and the company could not agree upon the loss, the same should be ascertained by two competent and disinterested appraisers, the insured and the company each selecting one, and the two so chosen should first select a competent and disinterested umpire; that the appraisers should then together estimate and appraise the loss and, failing to agree, they should submit their differences to the umpire. The agreement for submission to appraisers provided that E. S. Weyand (selected by respondent Jones), and W. J. Hempy (selected by appellant), should appraise the loss, and further provided that "the said appraisers shall first select a competent and disinterested umpire who shall act with them in matters of difference only."

The two appraisers met in Nevada, Missouri, and selected one Chas. Cress as the umpire on Monday, January 19, 1914. Hempy, the appraiser charged with bad faith and misconduct, was the one appointed by the company. He testified that he lived in Kansas City and was called on by the company to go to Nevada to act as appraiser; that it was not the first appraisement he had handled; that he had acted as appraiser in perhaps twenty-five cases, sometimes for the company and sometimes for the insured. He also testified that on the Sunday before the day on which the umpire was appointed and the appraisement made, he went to Nevada and saw Cress, who afterwards became umpire, and told him he was down there in connection with the loss, but did not say anything to him about acting as arbitrator.

On Monday following, Hempy proposed to Weyand, the other appraiser, that Cress be appointed as umpire. This was done. Hempy went and got Cress and, after the oaths as appraisers and umpire had

been taken, the three went to the place where the damaged automobile was. As they drove up to the garage Hempy said to Cress, "What is your charge to Ft. Scott?" and Cress replied "$10." Hempy said he was in a hurry to get over to Ft. Scott to catch a 2:15 train. It was then about nine o'clock in the morning. Cress was running an automobile livery in Nevada and Hempy's inquiry had reference to his charge for conveyance by automobile to Fort Scott. They then looked at the automobile as it stood. The hood of the radiator was taken off but otherwise the car was not taken apart so that the intricate parts thereof could be inspected.

The first item considered was the radiator. The two appraisers agreed upon the loss as to that. They then successively appraised and agreed upon the loss as to the wiring assembly, the spark plugs, the leather clutch, the hose and connection, the horn and the fan belt. There is evidence tending to show that when they came to the fenders, which appraiser Weyand testified were burned and warped and the paint thereon blistered, Hempy said "I will not allow anything on the fenders." To this Weyand replied, "I don't see why. The paint is ruined on them." Hempy replied, "Well I will not allow him any on them. If you don't like it, we will call Mr. Cress in and you can step to one side. We will not agree on those fenders and you have got nothing more to say. You can stand to one side. I have got no more business with you; me and Mr. Cress will settle this." Weyand further testified that he tried to show other damaged parts of the automobile which he and Hempy had not as yet examined, but Hempy told him to keep quiet, he had nothing to say. Weyand says that as much as a half dozen different times he tried to call Hempy's attention to different other damaged features about the automobile but each time received the same response. There was evidence further tending to show that Hempy and the umpire

Cress proceeded to make out a list of damaged articles and when they completed their appraisement Weyand wanted to know how much it came to and Hempy told him it was none of his business.  There was also evidence that the umpire Cress paid no attention to the articles Weyand claimed were damaged, saying he didn't know whether he had a right to say what they were damaged as he didn't hardly know what he was there for.  There was also evidence to the effect that after Hempy and the umpire Cress had finished listing and making their appraisement, Cress remarked that not enough damage had been allowed. To which Hempy replied that it was plenty, that he knew his business, for it wasn't the first car he had adjusted a loss on. The time taken in examining and making the appraisement by Hempy and Cress did not exceed thirty minutes after which they left and went to Cress' garage, Weyond following them in.  When he got inside Cress was saying to Hempy, "That is not enough damage." Weyand then called Cress outside and told him if he thought it was  not enough not to sign  the award. Hempy came out and said, "Come on Mr. Cress, come on; let's sign this—sign this up in a hurry."  Cress and Hempy went back in and Weyand followed saying to Cress "Charlie, if you say that is not enough don't sign it." Hempy then said, "Sign it, sign it, sign it." Cress then remarked, "Well, it is not enough.  I guess I will have to sign it" and placed his name to the award.

We think there was sufficient evidence from which the jury could find bad faith and misconduct on the part of Hempy which vitiated the award.  Even if it be true, as contended by appellant, that an appraiser cannot remain in and conduct an appraisal for the purpose of accepting the result if satisfactory, and then, merely because something in the procedure did not suit him, kick over the appraisement, if the same is not as large as he expected, still such is not this case.

Weyand was not allowed to make an appraisal if his testimony is to be believed, and we must accept his testimony as true because the jury were the judges of that and by their verdict have said it was true. He was forced out of the appraisement by Hempy who seems to have wanted to get rid of him as soon as possible and have substituted in his place the umpire Cress whom he had seen and talked to beforehand and whom he had suggested to Weyand for appointment as umpire. Weyand was forced out before it was known whether or not an agreement could be reached on other items of damage and before it was finally known whether an agreement could be reached even on the fenders. The policy provided that the loss should be estimated by the two appraisers and if they failed to agree their *differences* should be submitted to the umpire. The agreement for submission provided that the umpire should act with the appraisers "in matters of difference only." It was held in Home Ins. Co. v. Schiffs' Sons, 103 Maryland 648, that in such case if the appraisers agreed upon some of the items but disagreed as to others, this did not authorize the setting aside of one of the appraisers and the making of an award covering all the items since that was not in accord with the terms of the submission, and that such procedure will vitiate the award. However this may be, with reference to its application to this case, the evidence, if believed, is sufficient to show, or to authorize a jury to find, that Hempy was not acting in good faith in an honest attempt to fairly and impartially appraise the loss as a disinterested appraiser should have done. He not only refused to allow the other appraiser an opportunity to agree with him upon various items of damage but did not himself take a number of such items into consideration, or, if he did, refused to allow anything on them. Nor did he make any attempt, by a frank and conciliatory expression and exchange of views, to get to an agreement with his co-

appraiser, but on the contrary by his arbitrary, irritating and insulting manner did all he could to drive the other appraiser from the work before them. His haste in rushing through in thirty minutes the work of appraising the loss upon the various damaged parts of an intricate machine which plaintiff's two automobile experts testified could not be properly inspected without taking it apart so as to get at all of its mechanism and which required all of three hours to perform; his arbitrary and unjustifiable conduct by which at the first opportunity he thrust aside his co-appraiser and substituted therefor the umpire who seemed to have been an unwilling, though passive, instrument in his hands, so that the appraisement which they signed was nothing more than the expression of Hempy's will and not the honest judgment of both; all these things, if true, show plainer than words that Hempy was not a disinterested appraiser seeking to get at an honest estimate which would be fair and just to both parties, but was acting solely in the interest of the insurance company. Even if he really thought the damage was no greater than $205 and that his superior judgment should prevail, yet his unwarranted course of conduct was such as to prevent a fair and impartial appraisement, and the award which was signed was nothing more than a certificate of his arbitrary and partial judgment. This would at least constitute a legal fraud upon the respondent and vitiate the award. There was ample evidence to justify the jury in its finding.

Complaint is made that reversible error was committed in allowing evidence to be given of the difference in value of the machine immediately before and after the fire, the claim being made that the policy created a different measure of damages. Even if this claim be true, we cannot see wherein the admission of such evidence would be grounds for reversal if section 2082, Revised Statutes 1909 is to be given any effect whatever. The evidence complained of showed that the

difference in value was $500. Plaintiff's experts, however, in testifying to the amount of the loss, did so in accordance with the theory of appellant as to the terms of the policy and placed the loss, under that method, at $457.30, and said that even then the car would not be in as good condition as it was before the fire. The jury returned a verdict of $425. We cannot see wherein the appellant was injured by the evidence complained of even if its admission was erroneous.

Some objection is made to the way plaintiff's experts arrived at $457.30 as the loss sustained because they estimated the cost of certain parts necessary to be replaced at their cost when new without deduction for depreciation. But the evidence showed the automobile was practically new, having been run very little. The policy provided that the loss should not exceed what it would cost the insured to repair or replace the same with material of like kind and quality. The respondent could not replace the articles except by buying them new. Other objections are made but they are without merit. The judgment is affirmed. All concur.