221 F.Supp. 890 (1963)
PHOENIX ASSURANCE COMPANY OF NEW YORK, Plaintiff,
v.
Frank A. SINGER, and Margaret P. Singer, Defendants.
No. 62 C 310(2).
United States District Court E. D. Missouri, E. D.
July 19, 1963.
*891 J. H. Cunningham, Jr., Willson, Cunningham, McClellan & Gunn, St. Louis, Mo., for plaintiff.
Wm. J. Becker, Clayton, Mo., for defendants.
MEREDITH, District Judge.
This memorandum opinion embraces our findings of facts and conclusions of law in this cause tried to the Court without a jury. The plaintiff is a corporation organized under the insurance laws of the State of New York and the defendants are citizens and residents of St. Louis County, Missouri. The amount involved exceeds $10,000. Accordingly, this Court has jurisdiction.
On April 1, 1960, plaintiff issued to defendants a standard fire insurance policy for a three year period covering three items in the following amounts: Item 1, the dwelling in question, $40,000; Item 2, barn and dwelling, $20,000; Item 3, loafing barn and tool storage, $4,000. The policy insures defendants to an amount not exceeding the amounts specified above "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, * * *." At the time the policy was issued, an appraiser inspected the premises and for the benefit of the parties fixed the value of Item 1, the dwelling in question, at $40,000.
A fire occurred on the premises of defendants on March 15, 1962. Defendants were in Spain. A daughter, in charge of the dwelling at the time, notified defendants of the loss and they returned early in April, 1962. The insurance company had an appraisal made by Ray Wood of the cost of repairs. His estimate, as revised, was $24,961.33. Defendants employed an architect, William Duncan, whose estimate of the cost of restoring the dwelling was $38,084. Defendants duly submitted their proof of loss in the amount of $38,947.63.
There was a disagreement as to the amount of damages and plaintiff exercised its prerogative, under terms of the *892 policy, to have the values fixed by appraisal. The policy provides:
"In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."
On June 14, 1962, the parties entered into an agreement for submission to appraisers. The agreement, which was in evidence, recites that the insured selected Charles Hayward and the insurer Burt Wennecker as appraisers. In conformity with the policy, the agreement provides:
"Said appraisers shall together first select a competent and disinterested umpire, and shall then estimate and appraise the actual cash value of and the loss, of and to said property by said Fire, stating in writing, separately, (1) Actual Cash Value and (2) Loss; to each item, and failing to agree, said appraisers shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two shall determine the amount of actual cash value and loss.
* * * * * * *
"The ACTUAL CASH VALUE to be ascertained is of said property at the place of, and immediately prior to the occurrence of said Fire.
"The LOSS to be ascertained is the actual direct loss by said Fire.
"* * * It is expressly understood and agreed that the sole purpose of this agreement and the appraisal herein provided for is to ascertain and fix the aforesaid amounts of actual cash value and loss of and to the property aforesaid and this agreement and said appraisal shall not determine, waive or in any wise affect any question of liability to first party or any right of any subscriber of this agreement except to fix the amounts of said actual cash value and loss."
The two appraisers met and after each had rejected all of the other's proposed umpires, they finally agreed on Alfred Mayer.
On July 17, 1962, the two appraisers and the umpire examined the fire damaged residence and made notes on the extent of the damage. The three met again on July 19, 1962. The appraisers did not agree on the amount of the loss, but the insured's appraiser and the umpire agreed that the amount of the loss was $38,500. Accordingly, an award in the latter amount was signed and submitted by the umpire and defendants' appraiser on the form prescribed by the insurer to the insurance company on July 25, 1962. It is this award that plaintiff seeks to set aside in bringing this action to determine its rights under the policy. Relief sought is the Court's determination of the amount of the loss. Prior to trial plaintiff moved for the appointment of a disinterested contractor who would prepare a detailed estimate of the cost of repair and restoration for use during the litigation. Defendants have counterclaimed for a judgment in the amount of the award of the *893 appraisers, $38,500, plus interest from July 25, 1962, the date of the appraisers' award, plus ten percent of the award for vexatious delay, reasonable attorney's fee and $12 per day from April 5, 1962, for additional living expenses as provided for by the policy of insurance.
The complaint sets out six grounds for voiding the award. We have summarized them into five issues which we shall discuss in making our findings from the evidence related thereto.
1. Plaintiff alleged that the award itself was not a detailed description of the actual cash value or the amount of the loss. The evidence showed that defendants sent a letter to plaintiff enclosing a statement from the defendants' appraiser and the umpire dated July 20, 1962. This statement made reference to the $40,000 coverage of the policy and set out that they had determined that the amount of the loss was $38,500. Plaintiff urges that this statement's omission of the actual cash value is fatal to the award. We cannot agree with this contention for plaintiff sought and obtained an award submitted on a form provided by plaintiff entitled Declaration of Appraisers. The form, as completed and signed by the umpire and defendants' appraiser on July 25, 1962, apprised plaintiff of the following:

 "Actual cash value Loss
"1st Item $40,000 $38,500
 2nd Item
 3rd Item
 4th Item
 5th Item
 6th Item"

Neither the terms of the agreement for submission nor the terms of the policy required any further itemization. Only one item was submitted in the agreement for appraisal:
"One family frame, dwelling, situated N/W side Hwy. 109 and C, Chesterfield, St. Louis County, Missouri."
The agreement provides that the appraisers shall state in writing, "separately, (1) Actual Cash Value and (2) Loss; to each item * * *." The word "item" as used therein applied to both actual cash value and to loss and refers to the subject matter of the appraisal, the dwelling listed above. Under plaintiff's apparent interpretation, the appraisers would be required to itemize minutely the actual cash value of each part of the building immediately prior to the fire as well as the loss. But the agreement did not provide for any further breakdown than the one item, the dwelling in question. Further, the form provided by the plaintiff would neither permit nor require the detailed analysis sought by plaintiff. This is in harmony with the policy itself where Item 1 refers to the dwelling with a $40,000 value and the second and third items listed therein describe other separate buildings insured for specific amounts. The award on its face is valid. Plaintiff also urges that in addition to the omission of the actual cash value from the statement signed on July 20, 1962, there was no evidence to show that the two appraisers and the umpire in fact undertook to determine actual cash value. Plaintiff had the burden of proof on this matter and the fact that no evidence was adduced to show deliberation on the question of actual cash value certainly cannot support a conclusion that there was no discussion of actual cash value. There was no question here of coinsurance or of a policy provision requiring maintenance of insurance to the extent of one hundred percent actual cash value making that determination of vital importance as in Mound City Roofing Tile Co. v. Springfield Fire & Marine Ins. Co. (1925), 218 Mo.App. 395, 277 S.W. 349. The lack of evidence on the question is more susceptible of the inference that appraisers and umpire as well as the parties were aware of the policy's fixing of the actual cash value at $40,000 and had agreed on that amount as one not in dispute.
2. Plaintiff alleges that the umpire and the defendants' appraiser wrongfully refused to join with plaintiff's appraiser *894 in making a detailed estimate of the loss. Plaintiff's appraiser testified that after inspecting the damaged property they met at his office, each appraiser with his own repair estimate. After they had discussed a few rooms, the umpire terminated the room by room estimates and insisted on approaching the appraisal by estimating damage on the dwelling as a whole. Other testimony showed that there were two meetings of the appraisers and the umpire; that each of the three had made a thorough examination of the damaged property and that the two appraisers had made itemized detailed statements of loss. While plaintiff's appraiser's estimate of the cost of repairs was more detailed than that of defendants' appraiser, the submission agreement did not make mandatory the method of itemization claimed as essential to validity by plaintiff. We think it is enough that there was a discussion of various elements of damage and that the two appraisers made written estimates which were submitted and discussed with the umpire. The umpire also had the estimates of Ray Woods, who prior to the appraisal submission had estimated cost of repairs for plaintiff and of William Duncan, the architect who had performed a like service for defendants. Security Printing Company v. Conn. Fire Insurance (1922), 209 Mo.App. 422, 240 S.W. 263, and Security Printing Company v. Westchester Fire Ins. Co. (1920), 204 Mo.App. 390, 221 S.W. 430, relied on by plaintiff, are distinguishable on their facts both as to the items of machinery listed in the insurance policy and in the submission agreement. The defect in the appraisal award as it applied to building damage in Mound City Roofing Tile Co. v. Springfield Fire & Marine Ins. Co., supra, was found in the appraisers' estimate of the sound value of all buildings that were covered by the insurance policy rather than in estimating the sound value of the building that was damaged.
3. Plaintiff's allegation that the insured's appraiser was not competent is without support. He had been with the Federal Housing Administration, with the Veterans Administration of the United States for ten years adjusting fire losses and had adjusted fire losses and made appraisals for the Prudential Insurance Company and the National Homes Corporation and other construction companies operating in the area. He was competent. Nor was there clear evidence to support the allegation that he was not disinterested. The only evidence adduced in this respect was wide of the mark. It was shown that both appraisers consulted respectively the insured and the insurer in regard to the selection of an umpire.
It appears to the Court that both appraisers' consultations with those who had appointed them would be helpful in discharging their obligation to appoint a competent and disinterested umpire and is no ground for voiding the award. This brings us to plaintiff's major contention:
4. That the umpire was not disinterested and that he employed an invalid method of determining the amount of loss. First, the evidence does not support plaintiff's view that the umpire was selected and dominated by the insured's appraiser. The evidence shows that each appraiser rejected all proposed umpires suggested by the other. There was an impasse and in attempting to find a person agreeable to both, Alfred Mayer's name was mentioned by plaintiff's appraiser and later in the discussion defendant's appraiser asked if Mayer would be acceptable. Later they agreed on Mayer. It is of little moment who first suggested Mayer. If neither party applied to a court, as they might have at this juncture under terms of the policy, necessity would require that one or the other suggest whomever was selected. But the circumstances surrounding his selection did not involve either party improperly consulting with him before his selection other than inquiring of him if he would serve, which was a part of the factual situation present in Jones v. Orient Ins. Co. (1914), 184 Mo.App. 402, 171 S.W. 28. Prior to the time of the *895 award of the appraisers, Mr. Singer, one of the defendants who is in the real estate business, together with other real estate agents assembled some real estate in St. Louis County, which was sold to a corporation of which the umpire, Mr. Mayer, is president. Plaintiff asserts that this transaction alone is sufficient to invalidate the award and cites Schwartzman v. London & Lancashire Fire Ins. Co. (1927), 318 Mo. 1089, 2 S. W.2d 593, wherein an award was set aside on a showing that dividends received by the umpire from a corporation of which the umpire was an officer and shareholder, would necessarily include earnings the corporation received while acting as an agent for the defendant insurance company. On the instant facts defendant Singer's potential gain from the sale to the umpire's corporation came from the sellers of the real estate who paid his commission and as for the umpire, his gain, if any, could be said to be only the privilege of buying the property from defendant Singer and the other real estate agents. Absent any further showing that might suggest how the umpire stands to gain from such limited transactions with defendant Singer, we are not disposed to conclude from the facts in evidence that the umpire was an interested party. Having heard the testimony of the two appraisers and the umpire, this Court is convinced that the award in which the umpire and defendants' appraiser agreed was an honest expression of their opinion arrived at as a result of the exercise of each person's independent judgment.
Mr. Mayer had been a building contractor for thirteen years. He was qualified. It was his testimony that he considered both Ray Woods and William Duncan's estimates of cost of repairs in arriving at his decision. He further testified that his award represented his opinion as to the actual damage for repair cost and that in his view the building had settled as a result of the fire. Plaintiff introduced the following letter of Mr. Mayer's sent to Mr. Cooper, an adjuster for plaintiff:
"After umpiring the dispute on the property owned by Frank Singer on Highway 109 and Highway C, Chesterfield, Missouri, I have ascertained that the total loss to the insured, in my opinion, is $38,500.
"While it is feasible that this house might be restored for a figure below that, because of the notoriety and extent of the fire, I would deem it almost a total loss."
In plaintiff's view this letter shows that the umpire's award was based on the reasonable market value of the dwelling after the fire and not on the cost of repairs. Plaintiff reads the letter as if it stated: "because of the notoriety of the fire, the house is a total loss in my opinion". In our view the letter merely states that while the house might be restored for less than $38,500, the writer has been persuaded that it cannot be because of two factors, notoriety, which could affect the market value, and extent of the fire, which would bear on both the market value and the cost of repairs. Should the award be set aside because the umpire's judgment as to the cost of repairs was influenced by his judgment as to the reasonable market value of the house after the fire? If the issue of damage for partial loss were being presented to a jury, under the rule in Missouri, the actual cost of repairs would not be the proper measure of recovery. Tinsley v. Aetna Ins. Co. (1918), 199 Mo.App. 693, 205 S.W. 78, although the jury might properly consider cost of repairs as a factor in determining the amount equal to the damage done to the property, Patriotic Ins. Co. of America v. Franciscus (C.A.8, 1932), 55 F.2d 844; Johnstone v. Home Ins. Co. of New York (Mo.App. 1931), 34 S.W.2d 1029. The limitation of loss to the cost of repair or replacement is a limitation on the insurer's liability and not an independent measure of damages. Wrinkle v. Imperial Cas. and Indemnity Co. (Mo.App., 1961), 343 S.W. 2d 90.
The Missouri Supreme Court has recognized the possible conflict between a *896 policy provision limiting recovery in the case of a partial loss to the cost of repairs and found it inapplicable in the face of the statutory enactment now contained in RSMo § 379.150, V.A.M.S. Non-Royalty Shoe Co. v. Phoenix Assur. Co. (Mo.Sup., 1918), 210 S.W. 37. Damage to a building can be considered separately from the land on which it stands, Matthews v. Missouri Pac. Ry. Co. (1897), 142 Mo. 645, 44 S.W. 802; but the measure of damages remains as the difference in the value of the building before and after the damage, Rosen v. Kroger Grocery & Baking Co. (Mo.App., 1928), 5 S.W.2d 649. See also McIntyre v. Liverpool, London & Globe Insurance Co. (1908), 131 Mo.App. 88, 110 S.W. 604. Clearly if the appraisers had been a jury, consideration of value before and after the fire would have been required. Was it proper under the appraisal submission agreement? We are of the opinion that it was. The agreement did not require the appraisers and umpire to consider only the cost of repairs. The appraisers were to find the amount of the loss. This, they did. We find the umpire's consideration of the value of the building after the fire in making his award is not a ground for invalidating the appraisal under terms of the submission and the applicable law.
5. Plaintiff, urging that the variance between the cost of repairs as submitted by various contractors and the appraisers is so great that the award should be set aside, alleges that the amount of the award was greatly in excess of the actual amount of fire damage and that this was known by the umpire and defendant's appraiser when they signed the award. The award was in the amount of $38,500. Ray Woods, the contractor, estimated cost of repairs originally for the plaintiff at $22,544.13, revised for omissions at time of trial to $24,961.33. William Duncan, defendants' architect, estimated cost of repairs at $38,084. Plaintiff's appraiser Burt Wennecker's estimate was $25,057.89. Having found that the appraisers and the umpire exercised their own independent judgment and were all competent and disinterested, we are unable to conclude that the variance between the estimates is so great as to suggest mistake or fraud. Clearly the variance here is not as substantial as the differences in Non-Royalty Shoe Co. v. Phoenix Assur. Co., supra, and Phoenix Assur. Co. v. Davis (C.A.5, 1933), 67 F.2d 824.
From what we have said it follows that the award in the amount of $38,500 as determined by defendant's appraiser and the umpire is valid and should be sustained as a determination of values. Plaintiff's action will be dismissed with prejudice. While unnecessary to the decision, the Court took testimony on the merits of the amount of the appraisal award. Many photographs of the damaged dwelling were in evidence. These were examined. There was the testimony of defendants' appraiser Charles Hayward and Elmer Koob, a builder and developer, that in their opinions it would cost more to restore and repair than to replace. In appraiser Hayward's opinion the cost to restore would be between $60,000 and $70,000. The house was an old frame structure which had been built over a long number of years with additions and extensive remodeling. The joists and underpinnings of the house were cracked, the floors and roof had buckled, the bricks in the fire place were destroyed. The Court fully concurs in the amount of the loss as determined by the award.
The penalty for vexatious delay and attorney's fee is one generally imposed when it appears that the insurer had no reasonable grounds in fact or in law to resist the payment of the loss. While this statutory penalty will not be imposed merely because an insurance company loses its law suit, we are convinced that this case supports the imposition of the penalty. The insurance company under terms of its policy could and did properly call for an appraisal of the loss, but its refusal to abide by it was unjustified. There was no reasonable basis in fact or law as to the question of the validity of the appraisal award. Moreover, the Court is of the opinion that *897 the insurance company was not reasonable in its estimate as to the loss and damage and should have reconsidered its position once the award had been made. While the insurance company has from the inception conceded liability, at no time has it deposited in the registry of the Court even the amount it claimed represented defendants' loss.
Accordingly, defendants are entitled to a penalty for vexatious delay in the amount of 10% of the award or $3,850, in addition to a judgment in the amount of $38,500, with interest at the rate of 6%, applicable only to the latter amount from September 24, 1962, the date it became due under the policy, which is sixty days after the date of the award of the appraisers. A reasonable attorney's fee in this case is $6,000 and defendants will be awarded this amount.
Defendants in their counterclaim also seek to recover under terms of the policy for "additional living expenses" resulting from the occurrence of a fire. The insured Singer testified that as a result of the fire, they were forced to live in a barn on the premises which they fixed up and that their additional living expenses for food and laundry exceeded $1,500. "Additional living expenses" as defined by the policy is "the necessary increase in living expense incurred by the insured to continue as nearly as practicable the normal standard of living of the Insured's household for the applicable period" which is either the time which would be required, with the exercise of due diligence and dispatch, to repair or replace the damaged or destroyed property or the time which would be required for the Insured's household to become settled in permanent quarters. It is the opinion of the Court that the insured's testimony was inadequate to show additional living expenses for the reason that there was no showing of the cost of their living expenses prior to the loss and no evidence as to the applicable period to which the expenses would relate. Accordingly, no award will be made for additional living expenses.