James C. EAST and Jessie M. East,
Plaintiffs-Respondents,

v.

LANDMARK CENTRAL BANK &
TRUST COMPANY,
Defendant-Appellant.

No. 40406.

Missouri Court of Appeals,
Eastern District,
Division One.

July 17, 1979.

Frederick J. Dana, St. Louis, for defendant-appellant.

Raymond Howard, Kenneth Singer, St. Louis, for plaintiffs-respondents.

PUDLOWSKI, Judge.

Plaintiffs sued for conversion of their automobile. The jury returned a verdict awarding plaintiffs $5,000 actual damages and $5,000 punitive damages. Defendant appeals.

On November 31, 1970, plaintiffs James and Jessie East borrowed $4,277 from defendant Landmark Central Bank and Trust, then known as State Bank and Trust Company of Wellston, and executed an installment contract in order to purchase a 1969 Pontiac Catalina. The loan was secured by said automobile. The installment contract required plaintiffs' automobile to be insured at all times. The contract further provided that if plaintiffs failed to insure the automobile defendant could obtain the insurance and add the cost to plaintiffs' monthly payments. Initially the installment contract and note signed by plaintiffs called for 36 monthly payments of $117.42, due on the third of each month. Subsequently the payments increased to $131.00, then to $159.00 and finally to $202.51 because defendant bank obtained insurance and added the cost to the installment payments pursuant to the terms of the contract.

On April 20, 1971, plaintiffs received a new installment book specifying the new monthly payments to be $202.51, due on the twenty-fifth day of the month. Upon receiving the book Mrs. East telephoned the bank and informed the manager of the installment loan division that she could not afford to pay $202.51 per month and that she desired to obtain the insurance elsewhere. At trial Mrs. East testified that the bank's representative responded that it was very difficult for city residents to obtain insurance and that she might as well pay the $202.51. Further, Mrs. East testified that the bank officer informed her that he could not allow her to obtain insurance from another source and that if she attempted to do so he would have the car repossessed. Later the same day, after speaking with his wife, Mr. East called the bank and spoke with David L. Freund, a bank officer. Mr. Freund testified that he made the following notation concerning his conversation with Mr. East:

4/20 He phoned, advised not going to make new payments, refused to come in

to discuss. Refused to discuss by phone. Said not going to pay and we should come get the car and hung up.

After his conversation with Mr. East, Mr. Freund instructed the Bi-State Repossession Agency to repossess plaintiffs' automobile because he felt insecure about the loan. Mr. Freund justified his actions by relying on a clause of the contract which provides in pertinent part that:

. . . if buyer fails to make any of the monthly installment payments as provided for in the note secured hereby as and when the same shall become due, or fails to perform any agreement hereof, or if secured party for reasonable cause shall deem itself insecure, all remaining installments, shall, at secured party's option become forthwith due and payable, with or without notice, and secured party shall have and may exercise all rights on account of buyer's default as are permitted by law, and to the extent not contrary to law secured party may without notice or demand and without legal process enter onto any premises and take possession of said collateral. . . .

Notwithstanding defendant's threats the repossession of the car came as a surprise to plaintiffs. The automobile was taken during the late night of April 20, 1971, or early the following morning while it was parked in front of the Easts' residence. Mr. East discovered that the car was missing on the morning of April 21, 1971, shortly after he arose for work. At the time the car was taken plaintiffs were current in the payment of the debt, having timely made 27 of the 36 payments, and the next installment was not due until April 25, 1971. The debt remaining on the note amounted to $1,540.85.

After sending plaintiffs notice of sale the defendant bank obtained a repossession title from the State of Missouri and subsequently sold the car to Thomas Pontiac, the dealership from which the Easts purchased the car, for the amount of the debt remaining plus costs.

■ Defendant's first point on appeal is that the trial court erred in not granting its motion for a directed verdict because the plaintiffs failed to make a submissible case. The bank argues: (1) conversion is defined as the unauthorized assumption and exercise of the right of ownership over the personal property of another to the exclusion of the owner's right. *Carson Union May Stern Co. v. Pennsylvania R. Co.*, 421 S.W.2d 540, 543 (Mo.App.1967). (2) The parties had a binding and enforceable installment contract. (3) As the bank acted under the installment contract there was no unauthorized assumption of ownership. (4) Therefore, plaintiffs failed to make a submissible case of conversion and the trial court erred in not granting defendant's motion for a directed verdict. Further, defendant argues that it acted in accordance with the insecurity clause of the contract because it reasonably felt insecure and was therefore justified in repossessing the car when plaintiffs indicated that they could not afford the new monthly installments of $202.51. We do not agree. The reasonableness of defendant's actions was a question for the jury. *Sackett v. Hall*, 478 S.W.2d 381, 384 (Mo.1972).

In determining whether plaintiffs made a submissible case, the evidence must be viewed in the light most favorable to plaintiffs and all evidence unfavorable to plaintiffs will be disregarded. *Schneider v. Finley*, 553 S.W.2d 727, 729 (Mo.App.1977). The evidence shows: Plaintiffs were not delinquent in their monthly payments and the repossession occurred four days before the next payment date. Plaintiffs made and defendant accepted 27 such payments prior to the repossession. When plaintiffs asked if they could secure insurance from another source, an alternative not prohibited by the contract, defendant's loan manager responded that such insurance was unacceptable. Notwithstanding the bank's reply, plaintiffs attempted, before and after the repossession, to obtain insurance. Further, plaintiffs' car was insured at the time of repossession under a policy previously obtained through the bank. Viewing the above and all the evidence in the light most favorable to plaintiffs this was not a case

where "all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion . . ." *Walton v. United States Steel Corporation*, 362 S.W.2d 617, 621 (Mo.1962). Therefore it was not error to submit the case to the jury.

Defendant's second contention is that the trial court erred by failing to grant its motion for a directed verdict because plaintiffs did not present competent evidence of actual damages. This issue was not preserved for review. Plaintiffs amended their petition to allege actual damages of $3,900.00 for the conversion of their automobile, $1,566.00 for loss of earnings and $1,340.00 for transportation expenses. Defense counsel did not object to the admission of evidence bearing upon the lost earnings and transportation expenses. Because there was no timely and specific objection defendant cannot now claim error. *Wilkins v. Cash Register Service Company*, 518 S.W.2d 736, 748 (Mo.App.1975). Defendant did object to plaintiff James East's testimony concerning the value of the automobile. However, the only objection to the competency of Mr. East's testimony was based on the premise that an expert's opinion was required to evaluate the automobile. Defendant's position is legally incorrect; an owner may testify to the fair market value of his automobile. *Auffenberg v. Hafley*, 457 S.W.2d 929, 937 (Mo. App.1970). Thus the objection was without foundation in law. Furthermore, defendant's assignment of error is based on the trial court's failure to direct a verdict in its favor because plaintiffs did not, allegedly, introduce competent evidence of actual damages. An examination of defendant's motion for a directed verdict reveals it neglected to raise the issue of competent evidence to support the finding of actual damages. Therefore defendant's second allegation of error will not be considered. *Sargent v. Wekenman*, 374 S.W.2d 635, 637 (Mo.App.1964).

Defendant's third point on appeal is that the trial court erred in submitting instruction numbers 6 and 7 which allowed the jury to award punitive damages. The fourth allegation is that the trial court erred in giving instructions number 3, the verdict director, and number 5, the damages instruction. These instructions were not set out in defendant-appellant's brief, as required by Rule 84.04(e). This violation was the impetus for defendant's motion to suspend Rule 84.04(e) and for defendant's filing an appendix, well after the date the briefs were due, which contained instruction numbers 3 and 5. Similarly, plaintiffs-respondents filed a motion to dismiss, *inter alia*, due to defendant's failure to submit instruction numbers 3 and 5. In reviewing defendant's motion to suspend Rule 84.04(e) and plaintiffs' motion to dismiss we are cognizant that Rule 84.04(e) is to be strictly enforced and applied. *Cribbs v. Keystone American Service Corp.*, 572 S.W.2d 637 (Mo.App.1978). Rule 84.04(e) specifically provides in relevant part: "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." We deem it fatal that defendant failed to properly submit instruction numbers 6, 7, 3 and 5 in its original brief. Therefore, defendant's motion to suspend Rule 84.04(e) is hereby denied. Plaintiffs' motion to dismiss is granted, but only insofar as the assignments of error predicated on instructions 6, 7, 3 and 5 are concerned. Thus, we need not consider defendant's third and fourth points on appeal.

Defendant's fifth and final contention is that the trial court erred by permitting plaintiffs to amend their petition so as to include actual damages for loss of earnings. We do not agree.

The spirit of our present rules of civil procedure is to permit amendments to pleadings "when justice so requires." Rule 55.33(a). Further, "amendment to the pleadings to conform with the evidence are to be freely allowed where the presentation of the merits will be subserved and where the objecting party will not be prejudiced in the presentation" of his case. *Prewitt v. Continental Insurance Co.*, 538 S.W.2d 902, 906 (Mo.App.1973). It is within the sound discretion of the trial court to grant permis-

sion to amend the pleadings. Such a decision will not be overturned on appeal unless there is an obvious and palpable abuse of discretion. _S\_\_\_\_ v. W\_\_\_\__, 514 S.W.2d 848, 854 (Mo.App.1974).

 In the instant case the trial court permitted plaintiffs to amend their petition so that it alleged, *inter alia,* loss of earnings of $1,566.00. Defendant contends it was prejudiced by this amendment because by allowing the change, defendant did not have enough time to call a non-party witness. This non-party witness would have been knowledgeable about United States Government employee benefits. Defendant indicates that its expert would have offered evidence that plaintiff James East, a U.S. Government employee, was entitled to use sick leave time to account for his absence from work due to defendant's taking his automobile. Apparently, defendant seeks to mitigate the damages by showing plaintiff received sick leave payments.

It was not error to allow the amendment, nor was defendant prejudiced by its inability to call the non-party witness. Assuming that plaintiff James East did receive compensation under the sick leave provision of his employment contract the collateral source rule prohibited defendant from reducing the damage award by the compensation received by plaintiffs. The money so paid is analogous to sums paid under a policy of accident insurance, and as in such cases, the person whose tortious act caused the injury should not, by reason of said payments, be relieved of liability for earnings lost by the injured person as a result of the injury. *Siems v. Englehart,* 346 S.W.2d 560, 564 (Mo.App.1961).

Moreover, Rule 55.33(b) explicitly provides that issues tried with the express or implied consent of the parties are treated as if they were pled. The evidence shows defendant did not object to James East's testimony concerning the extent of his lost earnings until well after that ground for objection became apparent. In so doing defendant failed to enter a timely and specific objection. *Cheffer v. Eagle Discount Stamp Co.,* 348 Mo. 1023, 156 S.W.2d 591

(1941). Therefore defendant impliedly consented to the determination of the issue of lost earnings and the amendment of the pleadings was proper. *Nicklas v. Lincoln Liberty Life Insurance Co.,* 518 S.W.2d 106 (Mo.App.1974). Judgment affirmed.

SNYDER, P. J., and SMITH, J., concur.