STATE of Missouri,
Plaintiff-Respondent,

v.

Allan Jack HOOKER, Jr.,
Defendant-Appellant.

No. 14060.

Missouri Court of Appeals,
Southern District,
Division Two.

July 30, 1986.

John Sims, Ruyle & Sims, Neosho, for defendant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Presiding Judge.

A jury found defendant Allan Jack Hooker guilty of the distribution and delivery of cocaine, a Schedule II controlled substance, in violation of § 195.020.1, RSMo Supp. 1984. Defendant's punishment was assessed at imprisonment for 17 years under the provisions of § 195.200.1(4), RSMo Supp.1984. The defendant appeals. We affirm.

About 6:30 a.m. on March 25, 1984, a Joplin ambulance service received a report that a person was experiencing difficulty in breathing. Two paramedics, James Perry and Connie Schmidt responded. They were directed, or at least went to a residence in

Newton County either south of or in the south part of Joplin. Two volunteer firemen with emergency medical training—they are called "first responders" in this record—also answered the emergency call. When they arrived at the residence they were directed to the occupants of a vehicle parked nearby.

The emergency team found the defendant sitting on the "passenger side" of the vehicle, a black pickup truck. A nude woman, Ruth Fisher, was lying "with her head and upper part of her body" across his legs. The emergency team removed the patient from the vehicle and ascertained that she was "in cardiac arrest." She was not breathing. One of the paramedics asked the defendant what had happened to Ms. Fisher. Defendant replied that she had ingested cocaine and alcohol and had "overdosed." Defendant was then asked how much cocaine Ms. Fisher had ingested and by what route. Defendant answered that Ms. Fisher had ingested one gram of cocaine and that he and she had "snorted" it. The defendant also stated that Ms. Fisher had "seized" in the past under the influence of cocaine and that he thought she was having a seizure.

It is a fair inference that Ms. Fisher was clinically dead when the emergency medical team arrived. Nevertheless, she was maintained on a life support system for about 48 hours before she was pronounced dead by her attending physicians. An autopsy revealed a high level of cocaine and its metabolites in her body. Dr. James Habermann, who performed the autopsy, was of the opinion that Ms. Fisher died from the effects of cocaine. This prosecution followed.

The defendant's first point is that the trial court erred in admitting his incriminating statements that he furnished cocaine to Ms. Fisher, because there was no proof, independent of his inculpatory statement, of the corpus delicti. The point is very specifically stated and requires some discussion.

It is undoubtedly true that unless there is independent proof, either direct or circumstantial, of the essential elements of the corpus delicti, extrajudicial admissions, statements or confession of the accused are not admissible in evidence, and where improperly admitted are insufficient to sustain a judgment of conviction. *State v. Summers*, 362 S.W.2d 537, 542[13] (Mo. 1962); *State v. McQuinn*, 361 Mo. 631, 633, 235 S.W.2d 396, 397[2] (1951); *State v. Charity*, 587 S.W.2d 350, 353[2] (Mo.App. 1979). However, this rule has always been subject to the qualification that if a confession is made which enables the State to discover corroborating evidence of the particular crime confessed, the corroborating evidence need not be sufficient, independent of the confession, to establish complete proof that the crime has been committed. *State v. McQuinn*, 361 Mo. at 633, 235 S.W.2d at 397[4, 5].

What is the corpus delicti within the meaning of this rule? It consists of two elements: " '(1) Proof, direct or circumstantial, that the specific loss or injury charged occurred; (2) someone's criminality as the cause of the loss or injury.' " *State v. Hardy*, 365 Mo. 107, 111, 276 S.W.2d 90, 93 (banc 1955). In this case it consisted of (1) delivery, which means the actual, constructive or attempted transfer of a controlled substance, to Ms. Fisher, and (2) distribution, which means delivery other than by administering or dispensing the controlled substance. Section 195.010(12) and (13), RSMo Supp 1984. The trial court was entitled to take judicial notice that cocaine is a statutory narcotic (it is so defined by § 195.010(23), RSMo Supp.1984) without specific request that it do so. *State v. Hutchens*, 604 S.W.2d 26, 27–28[3] (Mo. App.1980). We do not suggest that the elements of the corpus delicti are the same as the facts which must be proved to obtain a judgment of conviction. We hold only that the two elements described constitute the corpus delicti for the purposes of the rule prohibiting conviction solely upon the basis of the defendant's confession.

Here, the defendant's initial statement that Ms. Fisher had consumed cocaine and alcohol led to the autopsy. The autopsy was complete enough to show that Ms. Fisher had ingested a fatal dose of cocaine.

The autopsy was also complete enough to show that Ms. Fisher was not suffering from any serious illness, much less one which would require treatment by the use of narcotics. This was not full proof of the corpus delicti, but as we have just said, the corroborating evidence need not establish full proof of the corpus delicti.

█ Upon trial, the State first put on its circumstantial evidence of Ms. Fisher's ingestion of a fatal amount of cocaine and evidence of her lack of any condition requiring use of a narcotic. It required no stretch of the jury's imagination to find that she had consumed it unlawfully. The State then put on its proof that defendant had admitted several times that he gave Ms. Fisher the cocaine and her death was all his fault, and other like statements. If the defendant's incriminating statements were initially inadmissible, they become admissible in the course of the trial, in light of the testimony of other officers, when the corpus delicti had become abundantly established, there was no prejudicial error, and the defendant's guilt was established. See *State v. Saussele*, 265 S.W.2d 290, 296[13] (Mo. banc 1954). The defendant's point is without merit. The defendant was not convicted on his bare confession without proof that any crime had been committed.

The defendant's other point is that the trial court erred to his prejudice in refusing to excuse venireman Bedell for cause, thereby requiring him to exercise one of his peremptory challenges. Of course, the defendant was entitled to a full panel of qualified veniremen from which to make his allotted peremptory challenges. *State v. Draper*, 675 S.W.2d 863, 865[1–4] (Mo. banc 1984).

█ What is demonstrated by this record, however, is that venireman Bedell knew some of the people who were going to testify for the State. Initially, Bedell stated that his acquaintance with these witnesses might possibly influence him. However, further voir dire by the trial court elicited the response that Bedell's acquaintance with those witnesses, particularly a deputy sheriff, would not prevent him from listening to the evidence and being fair to the defendant. The controlling rule is that the trial court must be accorded broad discretion in determining the qualifications of veniremen and its decision will not be disturbed absent a clear abuse of discretion and prejudice to the complaining party. *State v. Johns*, 679 S.W.2d 253, 263[18] (Mo. banc 1984). In this case, on voir dire venireman Bedell gave equivocal answers to defense counsel in response to questions which might well elicit equivocal answers. However, when the trial court questioned venireman Bedell, his answers to much more specific questions fairly indicated his ability to be a fair and impartial juror. When the trial judge is able to elicit clarifying answers which remove the uncertainty concerning the venireman's qualifications, the trial court's decision should be sustained. *State v. Ealy*, 624 S.W.2d 490, 494[13, 14] (Mo.App.1981). The trial court did not err in refusing to strike venireman Bedell for cause. There is no error in any respect advanced in this court, and the judgment is therefore affirmed.

PREWITT, C.J., and MAUS and CROW, JJ., concur.