David J. MEEKER and Barbara A. Meeker, Plaintiffs–Appellants,

v.

SHELTER MUTUAL INSURANCE CO., Defendant–Respondent.

No. 15421.

Missouri Court of Appeals, Southern District, Division One.

Feb. 10, 1989.

Motion for Rehearing or to Transfer to Supreme Court Denied March 9, 1989.

Application to Transfer Denied April 18, 1989.

---

1. Apparently the signed document was admitted into evidence.

Jerry L. Reynolds and Ronald A. Conway, Springfield, for plaintiffs-appellants.

E.C. Curtis, Phillip R. Garrison, Farrinton and Curtis, Springfield, for defendant-respondent.

PER CURIAM.

Plaintiffs, David and Barbara Meeker, appeal from the trial court's judgment affirming jury verdicts in favor of defendant, Shelter Mutual Insurance Company (Shelter), in the Meekers' lawsuit against Shelter, and in favor of Shelter and against the Meekers on Shelter's counterclaims.

In 1983, the Meekers had a homeowners insurance policy issued by Shelter providing coverage for damage to, or loss by fire of, their dwelling in Branson, Missouri, plus coverage for loss of their personal property, additional living expenses caused by the fire loss, debris removal and other items of damage. On July 18, 1983, the Meeker home and all of its contents were destroyed by fire. The Meekers made a demand on Shelter to pay the proceeds of the insurance policy. Shelter denied cover-

age, contending that the policy was void because when the Meekers applied for the homeowners policy, they made false representations regarding their prior fire losses, and that Shelter would not have issued the policy if the Meekers had truthfully stated the facts at the time they made application for insurance coverage.

The Meekers then sued Shelter and its sales agent, Pat Bishop, who had obtained the information on the application for insurance from the Meekers which resulted in the issuance of the policy in question. Their first amended petition was in nine counts. Count I claimed dwelling coverage in the amount of $84,000, and requested $8,550 statutory fees and $42,000 attorney's fees. Count II claimed personal property coverage in the amount of $46,-200, and requested $4,770 statutory penalty and $23,100 attorney's fees. Count III claimed additional living expense coverage in the amount of $16,800 (the Meekers had already received an advance from Shelter in the amount of $1,500, so they sued for $15,300, i.e. the balance of the $16,800 coverage), and requested $7,650 attorney's fees. Count IV claimed removal of debris coverage in the amount of $2,500, and requested $400 statutory penalty and $1,250 attorney's fees. Count V, against Shelter and Bishop, alleged the defendants unlawfully conspired together to deprive Meekers of payment under the insurance policy, and requested damages in the sum of $750,000 in actual damages, plus $2,000,000 in punitive damages, plus reasonable attorney's fees. Count VI claimed Shelter was negligent in its conduct in denying Meekers' claims, and prayed for damages of $750,000 actual damages and $2,000,000 punitive damages, plus reasonable attorney's fees. Count VII, also against Shelter and Bishop, alleged Bishop was negligent in his completion of the application for insurance in January, 1981, requesting $750,000 in actual damages and $2,000,000 as punitive damages, plus reasonable attorney's fees. Count VIII claimed against Shelter for other structures coverage in the sum of $1,000, plus $200 statutory penalty, and

$400 attorney's fees. Count IX claimed insurance coverage for loss of trees, shrubs, plants and lawns in the sum of $1,500, $300 statutory penalty, and $600 attorney's fees. Counts I, II, IV, VIII and IX requested 9 percent interest from and after September 9, 1983, on the amounts claimed.

Prior to the fire loss in question, David and Barbara Meeker had taken out two loans on which their real estate and various items of personal property were used as collateral. After the fire, Shelter purchased the promissory notes—one from Great Southern Savings and Loan Association, and the other from Boatmen's Bank of Taney County. These two promissory notes are the basis of Counts I and II of Shelter's three-count counterclaim against the Meekers. Count I was on the note purchased from Great Southern Savings and Loan Association having a principal and interest balance of $36,994.16 with interest at 9¼ percent per annum. Count II was on the note purchased from Boatmen's Bank of Taney County having a principal and interest balance of $37,842.27 with interest at the rate of 14 percent per annum. In Count III, Shelter sued the Meekers for $1,500 advance money paid to the Meekers by Shelter after the fire loss. Count III was not submitted to the jury by Shelter. However, the trial court, in response to Shelter's after-trial motion, entered judgment in favor of Shelter on Count III for $1,500.

Prior to trial, the court dismissed Counts V, VI, and Count VII of the Meekers' first amended petition pursuant to the motions to dismiss filed by Shelter and Bishop. In their motions to dismiss, Shelter and Bishop claimed that Meekers' claims asserted in these counts were preempted by the vexatious delay penalty statute § 375.420.[1]

The case was tried before a jury. After evidence was heard, Shelter's motion for directed verdict on Count III of the Meekers' petition, which was the claim for additional living expenses, was sustained by the

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.,

and all references to statutes are to RSMo 1978, V.A.M.S.

trial court. The jury then found for Shelter on the remaining counts of the Meekers' petition, and found for Shelter and against the Meekers on Counts I and II of Shelter's counterclaim, but neglected to compute interest on the amounts due which had been requested on those claims. The trial court then entered judgment, conforming to the jury's verdict, in favor of Shelter on Counts I, II, IV, VIII and IX of the Meekers' first amended petition. In response to Shelter's after-trial motion regarding its counterclaim in which it requested that the trial court compute the interest due on Counts I and II, and to enter judgment on Count III of its counterclaim, the trial court entered judgment in favor of Shelter for $36,071.96 plus $13,149.22 interest on Count I, $37,130.19 plus $19,722.68 interest on Count II, and $1,500 on Count III of the counterclaim. This appeal followed.

In their brief filed here, the Meekers allege 13 claims of trial court error. We affirm the trial court's judgment, as none of the points relied on have merit, and many of them border on the frivolous. The facts and legal issues of the case are quite simple, although the Meekers' attorney uses 761 pages of legal file, 1,098 pages of transcript, and 111 pages of appellate brief to try to convince us that they are not.

Viewed in the light most favorable to support the jury verdicts and the trial court's judgment, the facts are as follows. In January of 1981, Pat Bishop, a Shelter insurance agent in Branson, Missouri, was contacted by Barbara Meeker about the possibility of writing a homeowners policy to cover the Meekers' home and its contents. Bishop went to the Meeker home on January 26, 1981, to take an application for a homeowners policy. Barbara and David were present at all times when the application was being discussed. The Meekers wanted dwelling coverage for fire loss in the amount of $80,000, $8,000 for other structures, $40,000 personal property, and $16,800 additional living expense. From

the printed questions required to be answered by the applicant on the application for a homeowners policy, Bishop read to David and Barbara the question, "Have you or any member of your household had any fire, property, theft or liability losses; (whether insured or not)?" In response to information he received from the Meekers, Bishop wrote the following in the answer space: "1976–2X mobile home faulty wiring cause of fire." Bishop testified he used "2X" as meaning a double-wide mobile home. David J. Meeker signed the application under date of "1/26/81," and gave Bishop a check in the amount of $297.60 for the first year's premium, after which Bishop completed the binder portion of the application placing coverage in effect as of January 30, 1981, and continuing for 12 months thereafter. Bishop testified that he was not aware that the Meekers had had numerous prior fire losses, and that he would not have issued the binder had he known of them. Based on the information contained in the Meekers' application, Shelter's underwriter approved the application and a policy for a period of one year from January 30, 1981, was issued. The policy thereafter was renewed for an additional one year, ending January 30, 1983.

The Meekers did not pay the renewal premium which was due on January 30, 1983, until February 15, 1983.[2] Shelter then reissued the policy, and a new declaration sheet was issued, reissuing insurance coverage for 12 months beginning February 15, 1983. The new declaration sheet reads:

REISSUE OF
POLICY NUMBER 24–71–000877832–0001
ATTACHED TO POLICY FORM NO: HO–3 (01–82)
ATTACH THIS TO THE POLICY SHOWN ABOVE REPLACING DECLARATIONS ON THAT POLICY

The policy number referred to in the declaration is the number of the policy issued

2. The optional renewal premium due February 15, 1983, was for a higher amount due to computed inflation rates on property values, offering the Meekers the higher policy coverages.

They chose to pay the higher rate which resulted in the coverages being the amounts sued for, as opposed to the original amounts contained in the application.

effective January 30, 1981, and insured the same property as listed in the application which the Meekers submitted on January 26, 1981.

General policy condition 3 on page 16 of the policy provides:

3. **CONCEALMENT OR FRAUD.** This entire policy is void as to all **insureds** if any **insured** has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

After the fire in question, which the evidence indicates was of incendiary origin, the Meekers were contacted by Robert Barnett, an adjuster for Shelter, who took recorded statements from them regarding the fire. Mrs. Meeker admitted not one, but five prior structure fire losses, as well as various vehicle losses due to fires. The first structure fire occurred in Dewitt, Iowa, around 1965, where the Meekers were living at that time. Their home burned, and their personal property was destroyed. In July of 1972, a ceramic shop owned by the Meekers caught fire. The amount of insurance payment was $9,028.59. In January 1973, their mobile home burned and the insurance proceeds were $20,000. In February of 1973, there was another fire at the ceramic shop—this was a total loss—with insurance payment of $17,644.59. In October of 1975, the Meekers' had another mobile home, placed upon this same property as the previous mobile home and ceramic shop, destroyed by fire. This fire resulted in insurance proceeds being paid of $20,400.

On September 9, 1983, following receipt of the investigatory materials prepared by Barnett, Joseph Duncan, an attorney for Shelter, wrote to the Meekers advising them that Shelter was denying their claim. The letter reads as follows:

Dear Mr. and Mrs. Meeker:

Shelter Mutual Insurance Company has been advised that on July 18, 1983, you sustained a fire loss to your dwelling and contents located near Branson, Missouri. Upon receiving this information, our representatives proceeded to investigate this loss.

On January 30, 1981, you made application for a Homeowners Insurance policy with this company; the policy to provide insurance coverages on your dwelling and contents. Our agent, Mr. Pat Bishop, bound this application and sent it to this company together with the sum of $297.60, representing the annual premium charge.

Question 1 on the application for insurance, which you signed, reads as follows: 'Have you or any member of your household had any fire, property, theft [or] liability losses; (whether insured or not)?' In response to that question you said that you had had one mobile home fire in 1976. The application contains a statement that you applied for the insurance indicated, and you represented that the statements on the application were correct. The signature of David J. Meeker followed this representation.

During the course of our investigation, it was learned for the first time that prior to January 30, 1981, you had had several fire, property and liability losses other than the one in 1976 which you mentioned on the application.

The above Homeowners Insurance policy would not have been issued by Shelter Mutual had it not been induced to execute the policy because of your false representations as to those previous losses. Our underwriting regulations are such that insurance would not have been provided if you had truthfully stated the facts at the time you applied for the insurance. It is, therefore, the position of Shelter Mutual that the policy issued on its behalf, purporting to insure the above described property, is void and was never effective. This company cannot, therefore, recognize any claim presented by you for the above mentioned loss.

Enclosed is our check for $856.44, representing the total premium paid by you, plus 10 percent interest to date.

Yours very truly,

Joseph W. Duncan

Attorney

In addition to Bishop's testimony that he would not have issued the binder had he known of the prior loss history of the Meekers, Ilene Todd, an underwriter for Shelter who reviewed and approved the Meekers' application for insurance, testified that she would not have approved the application for issuance of a policy had she known of the prior fire losses. She also testified that past fire losses are important to an underwriter who is passing on an application for a homeowners policy, and that the number of prior fire losses has a bearing on whether an underwriter will approve an application for insurance coverage. The evidence referred to above warranted submitting the material misrepresentation issue to the jury. *See Galvan v. Cameron Mut. Ins.*, 733 S.W.2d 771, 773 (Mo.App.1987).

In their first point relied on, the Meekers claim the trial court erred in failing to grant their motion for a directed verdict at the close of all the evidence. This claim is divided into three allegations of error, the first of which is a contention that Shelter's denial of coverage was based upon its underwriting regulations. The Meekers apparently deduce this from the fifth paragraph of Duncan's letter set out previously which states: "... Our underwriting regulations are such that insurance would not have been provided if you had truthfully stated the facts at the time you applied for the insurance." The Meekers argue that since Shelter did not introduce its underwriting regulations at trial, its defense failed due to lack of proof, thereby entitling the Meekers, who had presented substantial evidence on their claims of loss, to a directed verdict.

■ A verdict may not be directed in favor of a party having the burden of proof if there are any genuine fact issues to be submitted to the jury. *Zagarri v. Nichols*, 429 S.W.2d 758, 760–61 (Mo.1968). Whether the Meekers concealed facts on their application and the materiality of those concealed facts are jury issues. *Crewse v. Shelter Mut. Ins. Co.*, 706 S.W.2d 35, 39 (Mo.App.1985). The Meekers' contention that Shelter's denial of coverage was based

solely on a violation of its underwriting regulations is ludicrous, and at odds with Shelter's affirmative defense set forth in paragraphs 14 and 15 of its answer to the Meekers' petition, which paragraphs raise the defense of intentional misrepresentation of material facts in the application for insurance. In addition, Duncan's letter of September 9th to the Meekers specifically states that the policy would not have been issued had Shelter not been induced to do so because of the Meekers' false representations as to prior losses.

■ The Meekers' second sub-point under point one is that the reissuance of the policy on February 15, 1983, after the renewal premium due January 30, 1983 was belatedly paid, was, in fact, a new policy unaided by an application, and, therefore, any misrepresentations by them in their application dated January 26, 1981, were irrelevant.

This theory was not presented to the trial court in their motion for a directed verdict as required by Rule 72.01(a). Therefore, the point has not been preserved for our review. *SAB Harmon Ind. v. All State Bldg. Syst.*, 733 S.W.2d 476, 487 (Mo.App. 1987). Even if the point were reviewable, it lacks merit as it is clear from the wording on the declaration sheet—"ATTACH THIS TO THE POLICY SHOWN ABOVE REPLACING DECLARATIONS ON THAT POLICY"—that the parties merely intended the renewal to be a continuation of the old policy. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 705 (Mo. banc 1984). Therefore, the provisions of the old policy declaring the policy void if it was obtained through a material misrepresentation of fact apply.

■ In their remaining allegation under point one, the Meekers contend that under the terms of the policy and § 375.003, Shelter had no right to "cancel" the policy because it had not given the Meekers 30 days notice of its intent to do so.

Here again, the issue is not preserved for our review as it was not presented to the trial court in their motion for a directed verdict. *East v. Landmark Central Bank*

*& Trust Co.,* 585 S.W.2d 222, 225 (Mo.App. 1979). Even if it were preserved, this argument is groundless. The cancellation and notice of cancellation provisions of the policy, as well as the statute which concerns notice of cancellation, do not apply where there are misrepresentations or concealment of material facts in an application for a policy. In such cases, the policy is void ab initio, not cancelled. *Crewse v. Shelter Mut. Ins. Co.,* 706 S.W.2d 35, 38 (Mo.App.1985). Point one has no merit.

In their second point, the Meekers assert the trial court erred in allowing Shelter's witnesses Rathbun and Todd to testify, over objection, because: (1) their testimony referring to industry custom and practice was irrelevant since "Shelter had denied liability on the specific ground of its underwriting regulations;" (2) the testimony of the witnesses as to what facts are material to a risk was hearsay, as "the only proper evidence to establish what facts are material were the underwriting regulations themselves;" and, (3) the names of the witnesses were not timely disclosed to the Meekers "thereby precluding effective preparations for their testimony."

■ Shelter's denial of the Meekers' claim was not based on a violation of its underwriting regulations, but was premised on the allegation that the policy was void due to misrepresentation and concealment by the Meekers in their application. Industry custom and practice is relevant to the issue of whether misrepresentations in an application for insurance are material. *Galvan v. Cameron Mut. Ins.* at 773; *Haynes v. Mo. Prop. Ins. Placement Facility,* 641 S.W.2d 497, 499 (Mo.App.1982).

The remaining sub-point alleges that Shelter's witnesses Ron Rathbun and Ilene Todd were not timely disclosed. Shelter's counsel, by letter dated May 22, 1987, advised the Meekers' attorney that he intended to use Rathbun and Todd as expert witnesses regarding the general practice and custom in the industry concerning prior losses. Rathbun was the assistant vice president of underwriting for the American National Property and Casualty Company of Springfield, Missouri, and Todd, as pre-

viously stated, was an underwriter for Shelter.

The Meekers moved for a protective order to preclude Todd and Rathbun from testifying at trial, claiming they had no opportunity to adequately prepare to meet the testimony of those expert witnesses before the time of trial. The motion was overruled, and they were allowed to testify. Rathbun, over objection, testified as to the general practice and custom in the insurance industry regarding the materiality of prior losses. Todd, also over objection, gave her opinion regarding the materiality of prior losses, and stated that, had she known of the Meekers' prior losses, she would not have approved the application.

The trial court has substantial discretion in admitting or rejecting evidence when the objection is that the name of the witness was not disclosed in a timely fashion. *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 878–79 (Mo.App. 1985). A trial court's discretion is not abused unless its ruling is so unreasonable as to shock the sense of justice. *Missouri State Park Board v. McDaniel,* 473 S.W.2d 774, 778 (Mo.App.1971). There was no abuse of discretion here.

■ The identity of the witnesses was revealed by letter dated May 22, 1987. Although the trial started on June 8th, the testimony of the two witnesses was not offered until June 11th. The Meekers made no attempt to depose or interview the two witnesses during this time, nor seek a continuance, so as to give them additional time to do so. Under those circumstances, there is no showing that the Meekers were prejudiced in any way by the trial court's refusal to bar the witnesses from testifying. *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d at 878; *Claude T. v. Claire T.,* 579 S.W.2d 141, 143 (Mo.App. 1979). The point has no merit.

In their next point relied on, the Meekers claim the trial court erred in failing to grant challenges for cause of venirepersons Tate, Chaney, Branstetter, Snowden, Rulon, Reich, Bowman and Judah because: (1) each were Shelter insured with Pat Bishop as their agent and, therefore, could

not be fair and impartial; and (2) Tate could not be a fair and impartial juror because parties to the lawsuit were his clients, and Tate never unequivocally stated that he would base his verdict on the evidence and the instructions.

Each of these persons gave the following responses when asked about whether their association with Shelter and/or Pat Bishop would affect their ability to be a fair and impartial juror: (1) Branstetter—responded that he would listen to the evidence, and with the court instructions decide the case fairly to all parties, based upon the evidence and instructions; (2) Chaney—said the fact that he was a Shelter insured with Bishop as his agent would affect his ability "Not a bit." He also said he would not favor Bishop over some other witness; (3) Snowden—stated that his being a Shelter insured with Bishop as his agent would not affect his judgment on the evidence; (4) Rulon—said his association with Shelter and Bishop would not bias his opinion as "fair is fair—if they owe it, they need to pay it; if they don't, they don't need to." His judgment would be based solely upon the evidence; (5) Reich—acknowledged that her nephew is an adjuster for Shelter. However, she stated that her nephew's affiliation with Shelter would not affect her ability to be fair and impartial; (6) Bowman—responded that his association with Bishop and Shelter would not affect his being unbiased and impartial. He would decide the case based solely upon the evidence; (7) Judah—unequivocally stated he would decide the case solely upon the evidence presented; and (8) Tate—stated that as an executive vice president of a local bank, he did not want to participate in the trial due to the effect the outcome might conceivably have on his business dealings with various persons involved in the trial. Tate gave no impression that he would not be a fair and impartial juror. Judah suffered from lupus. He became ill during the trial and had to be excused, but he was replaced by an alternate juror. There is no showing that this caused any prejudice to the Meekers.

After the trial court had denied the challenges for cause, the Meekers used their peremptory challenges to strike Tate, Branstetter, Reich and alternate Bowman from the jury panel. Chaney, Rulon, and Snowden remained on the jury panel and voted in favor of Shelter on all counts.

The trial court is vested with wide discretion in determining the qualifications of prospective jurors, and its rulings on that issue will not be disturbed absent a showing of a clear abuse of discretion and prejudice to the complaining party. *State v. Hooker*, 713 S.W.2d 885, 887 (Mo.App. 1986). We have searched the record, and find no evidence of any bias or prejudice on the part of any of the challenged jurors against the Meekers.

The only claimed connection between the challenged jurors and Shelter was the fact that they were insured by Shelter. Absent a showing that their policies were assessable or that they participated in policy dividends, which showing was not made here, the mere fact that those venirepersons had insurance policies with Shelter is not grounds for their disqualification. *Amos v. Altenthal*, 645 S.W. 2d 220, 224 (Mo.App.1983). As to those veniremen such as Branstetter, Chaney, Rulon, and Bowman, who were friends of Bishop, it must be remembered that Bishop was a witness and not a party to the lawsuit. Friendship with a witness, in absence of a showing of actual bias against the interest of the litigant, is no ground for disqualification of a prospective juror. *State v. Johnson*, 721 S.W.2d 23, 31 (Mo. App.1986). The answers of these venirepersons to questions during voir dire do not indicate any bias on their part which would cause them to attach more credibility to the testimony of Bishop than they would to that of any other witness. Since there is nothing in the record showing an actual bias on the part of any of the challenged venirepersons, there was no abuse of discretion in denying the challenges in question. *State v. Owens*, 620 S.W.2d 448, 450 (Mo.App.1981). The point has no merit.

Next, the Meekers contend the trial court erred in overruling their objection to the portion of Shelter's closing argu-

ment stating, "If you believe Pat Bishop, you must find for Shelter." The Meekers argue that such statement was a misstatement of law, in that such statement "did not supply all of the elements required for a verdict in favor of Shelter."

The trial court has broad discretion in the area of closing arguments, and rulings it makes on objections to statements made during such arguments will not be lightly disturbed on appeal. Counsel is accorded wide latitude in arguing facts and drawing inferences therefrom, and the law has a liberal attitude toward such arguments. *Lewis v. Bucyrus-Erie, Inc.*, 622 S.W.2d 920, 925–26 (Mo. banc 1981).

At trial, the Meekers denied that they had misrepresented the number of their prior fires to Bishop. Barbara Meeker testified that Bishop filled out the application for insurance in her home, and that David was not present. Barbara said that when Bishop asked her about prior fire losses, she told him they had had "several," including the house in Iowa, the two ceramic shop fires, and the two mobile home fires in Missouri. She offered no real explanation as to why Bishop did not list the five prior fires on the application. She stated that David later signed the application, and wrote a check dated January 26, 1981 for the premium in the amount of $297.60. She was not sure how the application and check arrived at Bishop's office.

This testimony was in direct conflict to that of Bishop who said that both David and Barbara Meeker were present when the application was filled out, that in response to his question concerning prior fire losses he was told only of one prior fire loss, and that David signed the application and gave him the premium check at that time. If the jury believed Mrs. Meeker, there was no misrepresentation concerning prior fire losses. If it believed Bishop, there was. Absent a misrepresentation, Shelter could not prove its defense. The closing argument comment in question was a legitimate inference that could be drawn when you couple Bishop's testimony regarding the Meekers' statements to him

regarding prior fire losses with his testimony that he would not have issued the binder had he known of the prior fire losses. The trial court did not abuse its discretion in overruling the objection in question.

■ Next, the Meekers claim the trial court erred in dismissing Counts V, VI, and VII of their petition for the reason that said counts stated a cause of action in that the counts alleged a conspiracy, a duty, a breach of that duty and damages as a result thereof. Counts V, VI and VII alleged various negligent and tortious acts on the part of Bishop and/or Shelter both prior to and after the Meekers' loss. In Count V, the Meekers alleged Shelter and Bishop "unlawfully conspired together to deprive Plaintiffs of payment" under their policy. Although a conspiracy was alleged, the specifics of the allegation, which were contained in sub-paragraphs (a) through (i) of Count V, sound in negligence. They alleged such things as Bishop's failure to list the Meekers' prior fire losses on the application, and his failure to inform them that an incomplete listing of such might result in Shelter's denial of a future claim. Also, the Meekers alleged that Shelter and Bishop were negligent in failing to advise them of their right to claim debris removal as part of their loss. Count VI alleged various acts or omissions on Shelter's part that resulted in its negligently denying the Meekers' claim. Count VII alleged negligent acts of Bishop while acting as Shelter's agent which contributed to the denial of the Meekers' claim.

The law is clear that when a cause of action is based on an allegation that an insurance company negligently denied payment to an insured following the filing of a proof of loss, such claim is preempted by § 375.420,[3] which is called the vexatious refusal to pay statute, and provides that in the event an insurance company vexatiously refuses to pay a loss, a court or jury may assess a penalty of 10 percent of the actual loss and reasonable attorney fees against the company. The Meekers' claimed damages are limited to those pro-

---

3. V.A.M.S. Supp.1989.

scribed by the statute, which damages were claimed in this case in Counts I, II, IV, VIII and IX. *Halford v. American Preferred Ins.*, 698 S.W.2d 40, 42 (Mo.App. 1985) (overruled on another point).

*Kelley v. Shelter Mut. Ins. Co.*, 748 S.W. 2d 54 (Mo.App.1988), cited by the Meekers as authority for their position, is inapplicable on its facts. There was no issue of preemption raised in *Kelley*, as there was no policy in existence in that case. It was a tort action based on the alleged negligence of the agent in failing to notify plaintiff that her policy had been cancelled. Here, the Meekers' claims were based upon a breach of duty on the part of Shelter for failure to pay their loss allegedly covered through a policy of insurance coverage. This was a contractual cause of action which, if proven, would justify payment of penalties and attorney fees by Shelter as provided for in § 375.420. Under the circumstances here, that remedy was exclusive. The trial court did not err in dismissing Counts V, VI and VII.

■ The Meekers next allege the trial court erred in prohibiting them from reading into evidence, as part of their case in chief, portions of the deposition of Bob Barnett, a claims adjuster for Shelter, and in prohibiting them from arguing "an adverse inference from Shelter's failure to call Barnett as a witness." They claim that statements in Barnett's deposition were admissible as admissions against interest by Shelter because Barnett was an agent of Shelter, and also, that since Shelter did not use Barnett as a witness in its defense, it could be inferred that his testimony would have been unfavorable to Shelter.

The point as written violates the mandate of Rule 84.04(d) as it does not state "wherein and why" the trial court's rulings were erroneous. The point does not state what Barnett's deposition testimony consisted of that the Meekers sought to introduce, how it would have benefitted them, why it was an admission against Shelter's interest, or why statements of an employee would bind the company. We are not obliged to search through the record to try and find out what the Meekers are talking about in connection with this point. The point, as stated, preserves nothing for our review.

■ In their next point, the Meekers contend the trial court erred in giving instruction 6B which defines "material," and reads as follows:

## INSTRUCTION NUMBER 6B

As used in these instructions, a concealment is 'material' if the fact concealed, if stated truthfully, might reasonably have influenced defendant to accept or reject the risk or to have charged a different premium.

The Meekers allege that the proper definition of "material" is if the fact concealed *"would* have," instead of *"might* reasonably have," influenced the insurer to deny the risk or to have charged a higher premium.

There was no alternative definition offered by the Meekers at trial, and their objection raised was solely "to the form of the instruction as improper." If, in their opinion, the instruction as written was susceptible to being misunderstood, an instruction supporting their version of the definition should have been offered by them. *Hodge v. Continental Western Ins. Co.*, 722 S.W.2d 133, 136 (Mo.App.1986). The definition of "material" used in instruction 6B follows the pronouncements of Missouri courts as to what "material," in the context in which it is used here, means. *Galvan v. Cameron Mut. Ins.*, 733 S.W.2d 771, 773 (Mo.App.1987). The instruction is a proper definition of the word "material" under the facts of this case. The point has no merit.

In their next point of alleged error, the Meekers contend that the trial court erred in giving, over their objection, instructions 10A, 14A, 18A, 22A and 26A. They contend that these instructions were converse instructions to their measure of damages instructions and, as such, were improper. The instructions complained of converse that portion of the Meekers' measure of damage instructions that relate to penalties and attorney fees, an example of which reads as follows:

INSTRUCTION NO. 14

If you find in favor of plaintiffs David and Barbara Meeker on their claim for damages against defendant Shelter Mutual Insurance Company, then you must award plaintiffs David and Barbara Meeker the sum of $46,200 less depreciation, if any, for the loss of plaintiffs David and Barbara Meekers' personal property and, in addition, you must award plaintiffs David and Barbara Meeker interest at the rate of 9% per annum from and after September 10, 1983 until the date of your verdict.

The phrase 'depreciation' as used in this instruction means and includes any reduction or lessening in value.

If you believe defendant Shelter Mutual insurance Company has refused to pay such sum without reasonable cause or excuse, in addition to the amount and interest, you may award plaintiffs David and Barbara Meeker damages for penalty in an amount not to exceed 20% of the first $1,500.00 of the damages and 10% of the amount of the damages in excess of $1,500.00, and, in addition, you may award plaintiffs David and Barbara Meeker a reasonable attorney fee for the recovery of the damages.

Shelter's instruction conversing this, number 14A, reads:

Your verdict must be for defendant, on plaintiffs' claim for penalties and attorneys fees unless you believe defendant's refusal to pay plaintiffs' loss was without reasonable cause or excuse.

 While it is true that MAI does not contemplate the converse of a damage instruction, Shelter's instructions under consideration here are not true converse of damage instructions. A true converse of damage instruction starts on the premise of a verdict for plaintiff and is applicable only if and when the jury has decided to find for plaintiff. *Aubuchon v. LaPlant,* 435 S.W.2d 648, 652 (Mo.1968). Here, even if the jury decided to find for the Meekers on the breach of the insurance contract issue, before they could assess penalties and attorney fees, they would have to find an additional fact, which was that Shelter

had no reasonable cause or excuse to refuse to pay their claims. *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 42 (Mo. banc 1976). Shelter was entitled to converse the factual element of whether their refusal to pay was without reasonable cause or excuse. This was a necessary finding if the Meekers were entitled to recover penalties and attorney fees. Additionally, in order for the Meekers to be entitled to penalties and attorney fees, it was necessary that the jury first find that they were entitled to a verdict on their claims under the policy. Since the jury found for Shelter on all counts submitted, there could be no award of penalties and attorney fees to the Meekers. Therefore, error, if any, in giving the so-called converse instructions offered by Shelter was harmless. *Koenig v. Skaggs,* 400 S.W.2d 63, 68 (Mo.1966). The point is denied.

 The next assertion by the Meekers of trial court error is that the trial court erred in giving instructions 9, 13, 17, 21 and 25. These instructions offered by Shelter are verdict directing instructions and are identical. They read as follows:

Your verdict must be for defendant under Instruction No. _____ if you believe:

First, plaintiffs, or either of them, in applying for defendant's insurance policy, intentionally concealed the fact that plaintiffs had had four (4) prior structure fire losses, in addition to the one disclosed, and

Second, the concealment was material, and

Third, plaintiffs, or either of them, in so concealing such fact intended to deceive defendant.

If plaintiffs or either of them intentionally concealed the fact that they had had four (4) prior structure fire losses in addition to the one disclosed, the intent to deceive will necessarily be implied as the natural consequences of such act.

The Meekers argue that the instructions gave the jury a roving commission to find for Shelter if it found and believed that either Barbara or David Meeker had, in applying for the policy, concealed facts

from Shelter because "intent to deceive is not an element of an intentional concealment." They contend that according to the instructions, the jury could find for Shelter if it found that one of the Meekers intentionally concealed facts from Shelter while the other disclosed them, and that the instructions were, therefore, erroneous as a misdirection of law.

Even though the Meekers' position on this issue is completely contrary to their trial theory that Barbara Meeker was the only one who talked with Bishop at the time of applying for insurance regarding prior fire losses, and that she had disclosed the facts relating to all of their prior losses, we do not decide the point on that issue. This objection to the instructions in question is raised for the first time on appeal, and was not specifically raised by the Meekers at time of trial nor in their motion for new trial. Since it was not, the point has not been preserved for review here. *Zobel v. General Motors Corp.*, 702 S.W.2d 105, 106 (Mo.App.1985).

 We next address the Meekers' claim that the trial court erred in directing a verdict for Shelter at the close of all of the evidence on Count III of the Meekers' petition. In this count, the Meekers sought to recover what they claimed were their additional living expenses as a result of the fire. The policy provided under Coverage D that if a covered loss made the insured's residential premises uninhabitable, Shelter would pay the reasonable increase in the policyholder's living expense necessary to maintain the insured's normal standard of living for the shortest time needed until the damaged property was repaired or replaced, or until the insured permanently relocated.

At trial, Barbara Meeker testified they had spent $3,247.97 for lodging at a resort, $1,640 for meals eaten at restaurants, $72 for laundry expenses, and $96 for beauty parlor expenses, plus unspecified amounts for gasoline due to a greater distance they had to drive to work from their temporary quarters. The Meekers eventually moved a mobile home onto their property where the fire had occurred. However, they offered no testimony as to what their expenses had been for shelter, food, laundry, and beauty care prior to the fire.

From what we gather from the record, the trial court sustained the motion for directed verdict because of a failure of the Meekers to prove what their necessary living expenses had been prior to the fire. In issuing its ruling, the trial court relied on the principle of law declared in *Phoenix Assurance Company of New York v. Singer*, 221 F.Supp. 890, 897 (E.D.Mo.1963), aff'd. 331 F.2d 10 (8th Cir.1964), which holds that testimony that an insured incurred living expenses in certain amounts after loss, absent a showing of what those expenses had been prior to a loss, was inadequate to support a claim for additional living expenses. The doctrine of *Phoenix* is sound, and the trial court did not err in applying it.

 Also, in order for the Meekers to recover any additional living expense money, they first had to prove policy coverage. By the jury's verdicts on their claims, they did not do so. It follows that even if there was any error in the trial court's ruling on the directed verdict motion, the error was harmless as the jury could not conceivably have found for the Meekers on Count III and against them on all other issues. The point has no merit.

 Next, we turn to the Meekers' claim of error relating to the trial court's denial of their request for production of documents. In connection with this point, the Meekers, prior to trial, requested that Shelter produce for inspection and copying "[a]ny and all files of your insured who had fire losses of any kind, nature, or description during the calendar year of 1983." After Shelter refused to comply with the request, the Meekers filed a motion in the trial court requesting that Shelter be compelled to produce those documents. The trial court denied the motion.

On appeal, the Meekers contend that such documents would have contained applications for insurance taken by Pat Bishop in 1983, and that such applications might have shown that Bishop had inten-

tionally or carelessly placed on, or left off, pertinent information. The request was not limited to applications taken by Pat Bishop, but requested files of *all* of Shelter's insureds who had fire losses in 1983.

A request for production of documents must describe the documents sought "with reasonable particularity," and may not be so broad as to include matters outside the scope of reasonable discovery. Rule 58.01; *State ex rel. Wilson v. Copeland*, 685 S.W. 2d 252, 253 (Mo.App.1985). Here, the request could not have been regarded as reasonably particular. The trial court was justified in denying the request on that basis alone. Most of the material requested would have been completely irrelevant to the Meekers' cause of action, and would have created an unconscionable burden on Shelter to produce the files. The point has no merit.

The last two claims of trial court error are considered together. The first is that the trial court erred in the giving of instructions 28 and 30, because these instructions assume the Meekers' liability when they had, in fact, admitted none. The instructions directed verdicts in favor of Shelter and against the Meekers on two promissory notes made by the Meekers and assigned by the payees to Shelter, and advised the jury under what circumstances they could award interest on the notes to Shelter. The Meekers allege that liability on the notes was contested and that such instructions can only be given in those rare cases when a defendant is liable as a matter of law and the only issue is the amount of damages. MAI 31.07, Notes on Use.

The Meekers also contend the trial court erred in entering judgment in favor of Shelter in the amount of $1,500 on Count III of Shelter's counterclaim. This amount represented an advance by Shelter's adjuster to the Meekers for additional living expenses after the fire for which Shelter would have been liable if there was policy coverage. The issue was not submitted to the jury, but after the jury found Shelter was not liable to the Meekers under the policy in question, Shelter filed an after-trial motion requesting that the trial court enter judgement on Count III in favor of Shelter and against the Meekers in the sum of $1,500.

The Meekers' statement of facts submitted to this court does not contain a fair and concise statement of the facts relevant to the questions presented for determination of these two points. The purpose of Rule 84.04(c), which requires a fair and concise statement of facts without argument, is to afford an immediate, accurate, complete, and unbiased understanding of the facts of the case. *Porter's Ready–Built, Inc. v. Plummer*, 685 S.W.2d 236, 237 (Mo.App.1985). The statement of facts here does not come anywhere close to providing us with an understanding of the facts relative to Shelter's counterclaims. The only references to the counterclaims are contained on pages 5 and 14 of the Meekers' brief. The reference on page 5 reads:

> In Count I, Shelter sued Meekers for a promissory note it had purchased from Great Southern Savings and Loan Association. The note had a principal balance of $36,994.16 and stated an interest rate of 9¼ percent per annum. In Count II, Shelter sued Meekers on a promissory note Shelter had purchased from Boatman's Bank of Taney County for a principal of $37,842.27 with interest at the rate of 14 percent per annum. In Count III, Shelter sued Meekers for $1,500.00 advance money paid to Meekers by Shelter after the fire loss. This claim was not submitted to the jury by Shelter. However, the Court, at Shelter's request after trial, entered judgment in favor of Shelter on Count III for $1,500.00.

The reference on page 14 reads:

> Regarding the promissory note to Boatman's Bank and the Great Southern Savings and Loan Association no other payments have been made by them after the fire.

Since the allegations of error contained in these two points were not properly briefed, as they are not supported by a fair and concise statement of facts, those points

relied on were not properly preserved, and will not be considered by this court.

JUDGMENT AFFIRMED.

All concur.

## MOTION FOR REHEARING OR IN THE ALTERNATIVE FOR TRANSFER TO THE MISSOURI SUPREME COURT

In their motion for rehearing or in the alternative to transfer to the Supreme Court, plaintiffs-appellants David J. Meeker and Barbara A. Meeker allege that this court overlooked, misinterpreted, or misstated material matters of law and fact in arriving at its opinion. The allegations all concern matters raised at great length by appellants' attorney in his 111 page appellants' brief and 15 page reply brief filed here, and are primarily a rehash of the attorney's arguments made in his brief and made during oral argument on appeal. Those allegations and arguments, as held in our opinion, were meritless then, and have not gained any stature in the interim.

The only allegation in the motion for rehearing that merits a response is the assertion that this court misstated facts when we stated, on page 15 of our opinion, that juror Dennis Tate "gave no impression that he would not be a fair and impartial juror." Appellants' attorney alleges that such statement is refuted by the record "which shows that Tate gave the distinct impression that he could not be a fair and impartial juror."

There is nothing in the record that even remotely suggests that Tate, who did not serve on the jury but was on the jury panel, was prejudicial in any way against the Meekers. It is true that Tate, who was a small town banker who had had dealings through the bank with the Meekers and Pat Bishop, did not want to sit on the jury. By his answers, he did everything he could to get off the jury, but there was nothing in his answers to questions posed by the attorneys for both sides to indicate that he was prejudiced for or against any specific person, be it Bishop or the Meekers.

In their motion, the Meekers state the following regarding questions asked Tate by the attorneys during voir dire and his answers to them which allegedly show bias on his part:

> After stating that both sides of the lawsuit were clients of his, Tate was asked: 'Do you think that that might effect [sic] your ability to give each side of the case a fair and impartial trial.?' Mr. Tate responded 'I think it very possibly could effect [sic] my ability to do that.' When asked by Shelter's counsel, 'Are you willing and are you able to listen to the evidence that comes into this case from the witness stand here and listen to the jury instructions that the judge gives you in this case and decide this case based solely on that?', Mr. Tate responded, 'I'm not sure I could do that.' When Shelter's counsel rephrased the question and asked: 'Do you feel like in your own mind that you could listen to the evidence in this case and render a decision that in your own mind you believe is fair based on the evidence?', Mr. Tate replied: 'That's a tough question to answer. I don't know.'

■ While Tate, in his answers to the attorneys' questions, waffled on whether he could be impartial, the important question is whether those answers amounted to a "manifest invasion of a fair trial" for the Meekers. *Hefele v. National Super Markets, Inc.*, 748 S.W.2d 800, 804 (Mo.App. 1988) (quoting *Johnson v. Missouri–Kansas–Texas Railroad Co.*, 374 S.W.2d 1, 3 (Mo.1963)), as the crucial question is whether such answers given by the prospective juror indicated an actual bias against the Meekers. *State v. Owens*, 620 S.W.2d 448, 450 (Mo.App.1981). It is obvious that they did not. The mere possibility of prejudice on the part of a prospective juror does not disqualify him, as actual bias against the interest of the litigant must be shown. *State v. Johnson*, 721 S.W.2d 23, 31 (Mo. App.1986). Since there was no showing of prejudice to the Meekers by retaining Tate on the jury panel, there was no clear abuse of discretion on the part of the trial court in denying the Meekers' challenge of Tate for cause.

The motion for rehearing, or in the alternative to transfer to the Supreme Court, is denied.

All concur.