John A. LASTER and Dorothy Laster, Respondents,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellant.

No. 48724.

Missouri Court of Appeals, Eastern District, Southern Division.

May 7, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1985.

Application to Transfer Denied Aug. 7, 1985.

among other requirements that the claim may be filed "in the county of claimant's last residence."

Evans & Dixon, Gerre S. Langton, Eric M. Martin, Mary K. Fitzgerald, St. Louis, for appellant.

W. Kenneth Rohrer, Farmington, for respondents.

CRIST, Judge.

Defendant State Farm Fire and Casualty Company (Insurer) appeals from a judgment entered on a jury verdict for plaintiffs (the Lasters) on their claim arising from the theft of the Lasters' truck. Lasters were awarded $10,613.00, exactly the sum requested, on their claim under the insurance policy, and $1,211.20 as a statutory penalty and $5,611.24 attorneys' fees for vexatious refusal to pay. We affirm in part and reverse and remand in part.

Insurer attacks the sufficiency of the evidence, asserting Lasters' claim of vexatious refusal to pay should not have been submitted to the jury. We view the evidence in the light most favorable to plaintiffs, and give them the benefit of all reasonable inferences therefrom. *Lane v. Cape Mut. Ins. Co.*, 674 S.W.2d 644, 645[1] (Mo.App.1984).

In February, 1983, Lasters purchased a used 1979 pickup truck for $2,625.00 in cash and a 1975 pickup truck worth approximately $2,500. The testimony at trial was the 1975 truck was used as a source of custom parts (chrome running boards, bed rails, sliding back glass, automatic transmission, air conditioner, AM–FM radio, chrome step bumper, trailer hitch, and wheels) which were installed on the 1979 truck at or near the time of purchase. Lasters checked the vehicle identification number (VIN) on the car against that shown on the "pink slip"; the person who installed the equipment checked the VIN on the car with the seller. Both testified the VIN matched. The truck was stolen on March 14, 1983, a few days before the title was received.

Lasters reported the theft to Insurer. The VIN reported on the policy was taken from the pink slip. Insurer's investigator reported:

(1) The truck had been built in Norfolk, Virginia, which was significant in that most trucks built there do not end up in Missouri.

(2) The truck had been previously wrecked in Louisiana, where the insurance carrier had "totalled" the truck.

(3) The owner in Louisiana described a truck without the equipment Lasters claimed.

(4) The chain of title revealed a discrepancy in the mileage, and

(5) A person, known by the insurance investigator to be involved in auto theft, had some connection with the truck.

The investigator, after examining the data from the accident, decided it would have been economically unfeasible to have rebuilt the truck after that accident.

This investigation took more than the allowed time. Insurer wrote Lasters asking for more time to investigate. A memo in the company's file indicates Mr. Laster called, "want[ing] to know what that there letter means." Mr. Laster also testified he received three letters from Insurer written by three different people. None had a phone number for him to call for more information, and, when he did call, he received the "run-around."

Insurance company denied the claim, alleging the vehicle stolen was not the one titled by Lasters. It asserts justification in denial of the claim because the vehicle had been "re-tagged" citing the differing equipment, the economic unfeasibility of restoring the truck, and the presence of a person who was identified with auto theft in the chain of title. (This last factor was downplayed at trial by the investigator.) There was no direct evidence the VIN on the truck did not match the VIN on the "pink slip". Insurance company's denial letter contained an error in the VIN that was explained as a typographical error.

■ To recover for vexatious refusal to pay, one must show insurer's refusal to pay a loss was willful and unreasonable to a reasonably prudent person. The existence of a litigable issue will not preclude liability if the insurer was vexatious and recalcitrant. *DeWitt v. American Family Mut. Ins. Co.,* 667 S.W.2d 700, 710 (Mo. banc 1984). A refusal to pay, based on a suspicion without substantial facts to support that suspicion, is vexatious. *Travelers Indem. Co. v. Woods,* 663 S.W.2d 392, 396–97 (Mo.App.1983).

■ The evidence in this case is sufficient to show a refusal to pay based on unfounded suspicions and a recalcitrant attitude by insurance company. Discounting, as did Insurer, the tenuous presence of a person with suspected involvement in auto theft in the chain of title, the only facts indicating the possibility of "re-tagging" were the extent of the damage in the previous wreck and the differences in the descriptions of the truck. This is insufficient. See *Horton v. State Farm Fire & Cas. Co.,* 550 S.W.2d 806, 808, 809 (Mo.App. 1977). The only attempt by insurance company to gain Laster's explanation of the differences was in a phone call which was not recorded or noted in the file on the case. Laster's testimony as to his treatment upon his attempts to gain information from insurance company showed a vexatious and recalcitrant attitude on company's part. The insurance company file contained a notation the claim should be settled if the vehicle was not recovered by "4/5," further evidence of recalcitrance. *Hounihan v. Farm Bureau Mutual Ins. Co. of Mo.,* 523 S.W.2d 173, 174, 176 (Mo. App.1975).

Insurer also claims there was no evidence to support submission of damages. They complain first concerning the recovery on the truck, insisting there was no evidence of the fair market value of the truck. A close question on this issue is presented.

■ The measure of Lasters' damages is the fair market value of the stolen item. See *Bewley v. Allright Carpark, Inc.,* 617 S.W.2d 547, 550 (Mo.App.1981). The evidence was the truck was worth, to Lasters,

the cost *to* acquire, or $5,125. While inartfully phrased, this testimony is to the effect the truck was still worth the purchase price. Given the relatively short period of time between purchase and theft, this was sufficient evidence of fair market value. *Byrd v. Brown,* 641 S.W.2d 163, 176–77 (Mo.App.1982).

■ Insurer correctly asserts the lack of evidence to support an award for transportation expenses. The policy as amended provided the insurance company "will repay you for transportation costs if *your car* is stolen. We will pay up to $14.00 per day for the period that begins 48 hours after *you* tell us of the theft. The period ends when we offer to pay for *loss."* Lasters offered no proof of transportation costs. There had to be proof of what those damages are, and absent such proof, the judgment for damages cannot stand. *Crews v. Tusher,* 651 S.W.2d 677, 679 (Mo. App.1983).

Since the damage award was for the value of the truck and transportation expenses, we reverse as to damages under the policy.

■ As there is no error pertaining to liability, we reverse and remand on the issue of damages only. See *Berry v. Federal Kemper Ins. Co.,* 621 S.W.2d 948, 954 (Mo.App.1981). Since vexatious refusal to pay was fairly determined by the jury, this issue should not be resubmitted. After the amount of recovery under the policy, with interest, is determined, the trial court shall allow Lasters in addition thereto twenty percent of the first fifteen hundred dollars of the loss and ten percent of the amount of the loss in excess of fifteen hundred dollars and an attorney fee of $5,611.24 in accordance with § 375.420 and the original jury verdict. No additional attorney fees shall be allowed on retrial, as such retrial is not the fault of insurer.

DOWD, P.J., and CRANDALL, J., concur.