Dorothy G. MEARS and Donal McCloud, Respondents,

v.

COLUMBIA MUTUAL INSURANCE CO., Appellant.

No. WD 46395.

Missouri Court of Appeals, Western District.

May 11, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1993.

Michael Waldeck, Kansas City, for appellant.

Stephen Caruso, Kansas City, for respondents.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

Defendant, Columbia Mutual Insurance Company (Columbia), appeals the jury verdict of $131,860, awarded to plaintiffs, Dorothy Mears and Donal McCloud. Plaintiffs claimed that defendant wrongfully denied coverage under a homeowner's policy for damages sustained as a result of a fire at their residence on November 1, 1988.

Plaintiffs purchased a house in Grain Valley, Jackson County, Missouri in early October 1988. At approximately the same time, they purchased a homeowner's policy with Columbia through Norman Kuecker, an insurance agent. In obtaining insurance for the house, Dorothy Mears submitted an application for insurance. On the application, Ms. Mears was asked if she or a member of her household had ever been convicted of a crime or had any property, theft, or liability losses? In response to the first question, Ms. Mears answered in the negative. As to the second question, Mr. Kuecker marked "no" because he couldn't "recall any losses of any magnitude." During the course of Columbia's investigation of the November 1, 1988 fire, Columbia discovered that Ms. Mears had three prior claims for which she received insurance benefits, one being within the three-year period of Columbia's application question concerning prior claims or losses.[1] Columbia also found that Ms. Mears had a twenty-year old Kansas conviction of criminal trespass for which she served a short time in jail.

Less than a month after the purchase of the house, on November 1, 1988, a fire occurred at plaintiffs' residence. At approximately 1:45 p.m. while driving by the plaintiffs' house, Mr. Joseph Vereecke, an independent witness, saw a man, later identified as similar in appearance to Donal McCloud, in the plaintiffs' driveway with a truck containing furniture. On passing the house about fifteen minutes later, Mr. Vereecke observed thick clouds of smoke coming from plaintiffs' house. Mr. Vereecke

---

1. Columbia's Underwriting Rules provide that an agent should not bind coverage when the applicant or a member of his/her household has had a previous fire, theft, or liability loss of $500 or more within the last three years.

testified the fire began approximately 1:50 to 2:00 p.m.

The dispatcher's alarm was received at 2:15 p.m. It took approximately five minutes for Fire Marshall Greg Rector and a crew of fire fighters to get to the fire scene. Upon his arrival at the fire, Fire Marshal Rector observed heavy, dark smoke and flames on the side of the house. When Fire Marshal Rector made his initial examination, he observed a rapidly moving fire burning from floor to ceiling, rolling within the room located on the east side, at the north end of the house. It took approximately one hour and twenty minutes for Chief Rector's fire fighters to bring the blaze under control.

Larry Linnemeyer, Columbia's fire investigator, investigated the plaintiffs' claim. His initial meeting with the plaintiffs occurred on November 3, 1988. At this time, he met with each plaintiff individually, obtained their statements concerning the fire, obtained an authorization to visit the fire scene, and gave them a $2,000 cash advance on their additional living expense coverage. Mr. Linnemeyer then investigated the scene and sent ash samples to a chemical laboratory at Southwest Missouri State University. The ash sample revealed evidence of an accelerant. Based upon this fact and his investigation, Mr. Linnemeyer concluded that the fire was intentionally set.

Wayne Wilde, Vice President of Claims for Columbia, was made aware of the loss within a few hours of when it was reported to the company. Mr. Wilde received an initial report from Mr. Linnemeyer's November 3 investigation as well as the official fire department investigation. He authorized the $2,000 cash advance along with a second $1,000 cash advance tendered on November 22, 1988. Once the investigation was complete and a committee of individuals reviewed the investigation at Columbia, the decision was made to deny the claim.

Plaintiffs filed a petition seeking recovery of the policy benefits and for vexatious refusal to pay pursuant to §§ 375.296, RSMo 1967 and 375.420, RSMo 1975. Both claims were submitted to the jury, which returned a verdict in plaintiffs' favor on Count I, for the loss of property in the amount of $91,100 plus $13,000 interest, and on Count II, for vexatious refusal to pay in the amount of $9,260 and $18,500 for attorney fees. Columbia filed a Motion to Amend the Judgment seeking the court's order to set off the sum of $52,500 from the total judgment amount, which amount represents the outstanding balance of the mortgage which Columbia satisfied following the loss. Columbia also filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative, a Motion for New Trial. Both motions were denied and Columbia appeals.

Columbia contends that the trial court erred: (1) in submitting Instruction No. 7 defining the term "material," (2) in submitting the issue of "vexatious refusal to pay," because there was not substantial evidence supporting plaintiffs' claim, (3) in overruling Columbia's Motion for a Directed Verdict at the Close of All Evidence, and (4) in overruling Columbia's Motion to Amend Judgment to provide for a set off based on Columbia's satisfaction of the mortgage.

 Columbia maintains that the trial court erred in submitting Instruction No. 7, which defines the term "material" in the context of Columbia's affirmative defense instruction regarding "material misrepresentations" made by plaintiffs in the policy application. Instruction No. 7 provides:

> As used in these instructions, a misrepresentation is "Material" if the fact misrepresented, if stated truthfully, would likely affect the conduct of *those engaged in the insurance business* acting reasonably and naturally, in accordance with the practice usual among such companies under such circumstances.
>
> (emphasis added).

This is a not-in-MAI instruction. Where the challenged instruction is not found in Missouri Approved Instructions, the question is whether it follows the substantive law and can be readily understood. *MFA, Inc. v. Dettler*, 817 S.W.2d 658, 663 (Mo. App.1991) (*citing Murphy v. City of*

*Springfield,* 794 S.W.2d 275, 278 (Mo.App. 1990)). When such an instruction is submitted, no error is presumed. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc 1986). In fact, to reverse a jury verdict on the grounds of instructional error regarding a not-in-MAI instruction, "it must appear that the offending instruction misdirected, misled, or confused the jury; the burden to prove the error rests with the party challenging the instruction." *MFA,* 817 S.W.2d at 663 (*citing Cornell,* 712 S.W.2d at 682).

■ During the instruction conference, Columbia objected to Instruction No. 7 as a misstatement of Missouri law and tendered the following instruction:

> As used in these instructions, a representation in the application for insurance is "material" if the facts represented, if stated truthfully, might reasonably have influenced *defendant Columbia Insurance Company* to accept or reject the risk or to have charged a different premium. (emphasis added).

Columbia cites to *Meeker v. Shelter Mut. Ins. Co.,* 766 S.W.2d 733, 743 (Mo.App. 1989), as support for this definition of "material." The instruction submitted in *Meeker* is the same as Columbia's refused instruction.[2] However, we find Instruction No. 7 is the correct statement of the law as provided in this court's decision in *Crewse v. Shelter Mut. Ins. Co.,* 706 S.W.2d 35, 39 (Mo.App.1985).

The facts of *Crewse* are similar to the present case. In *Crewse,* plaintiffs purchased their house, remodeled it, and bought homeowner's insurance. In the application, they failed to disclose that Mr. Crewse had two prior fire losses with respect to his motor vehicles and that Mr. Crewse had filed for bankruptcy a few years earlier. When the Crewse's house was destroyed by fire, the insurance company sought to avoid the policy claiming it was void ab initio because the omissions from the policy application were material as a matter of law. The defendant insur-

ance company also made the argument that had the application questions been answered truthfully, it would have increased the premiums or refused to issue the policy. This is exactly what Columbia's refused instruction requires. However, the *Crewse* rationale was what a reasonable person in the insurance industry would be influenced to do, not, as Columbia suggests, what might have reasonably influenced Columbia Insurance Company to do. In *Crewse,* this court answered these arguments by holding that:

> The question presented is not whether the insurer was actually influenced. A misrepresentation is material if it would likely affect the conduct of a reasonable man with respect to his transaction with another. [citation omitted]. In other words, "What those engaged in the ... insurance business, acting reasonably and naturally, in the accordance with the practice usual among such companies under such circumstances would have done had they known the truth." [citations omitted]

*Crewse,* 706 S.W.2d at 39.

This definition of "material" is consistent with that found in *Galvan v. Cameron Mut. Ins.,* 733 S.W.2d 771, 773 (Mo.App. 1987), which was cited by the *Meeker* court as pronouncing the proper definition of "material" according to Missouri law. In *Galvan,* the court held that:

> The test of materiality is whether if stated truthfully the answer might reasonably influence an insurer to reject a risk or charge a higher premium. Whether the insurer in fact was influenced is not determinative. Industry custom may be considered in applying this test. Whether the two misrepresentations here are material is a question of fact for the jury.

*Id.* 733 S.W.2d at 773.

As a result, we find that Instruction No. 7 is a proper definition of the word "material" and that Columbia failed its burden to

---

**2.** The instruction submitted in *Meeker* was the only instruction offered. The fact that another instruction defining "material" was not offered

was part of the court's rationale in allowing the instruction. *Meeker,* 766 S.W.2d at 743.

show how the instruction misdirected, misled or confused the jury. Point denied.

We reach a different result as to defendant's second point. The defendant contends that the trial court erred in submitting an instruction on vexatious refusal to pay since there was no substantial evidence supporting this contention. To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. § 375.296, RSMo 1967; § 375.420, RSMo 1975; *Herpel v. Farmers Insurance Co.*, 795 S.W.2d 508, 510 (Mo. App.1990). Section 357.420 must be strictly construed as it is penal in nature. *Crewse*, 706 S.W.2d at 40. A refusal to pay, based on a suspicion without substantial facts to support that suspicion, is vexatious. *Laster v. State Farm Fire and Casualty Co.*, 693 S.W.2d 195, 197 (Mo. App.1985). On the other hand, when there is an open question of law or fact, the insurer may insist upon a judicial determination of those questions without being penalized. *Joachim Savings & Loan Ass'n v. State Farm Fire and Casualty Co.*, 764 S.W.2d 648, 651 (Mo.App.1988) (*citing Hay v. Utica Mut. Ins. Co.*, 551 S.W.2d 954, 958 (Mo.App.1977)).

The insurance company early-on denied the plaintiffs' claim based on, among other things, the company's belief that they had intentionally started the fire. In this case, after an investigation by Fire Marshall Rector and Columbia's own fire investigator, Larry Linnemeyer, the facts known to Columbia were that (1) all accidental causes of the fire had been ruled out; (2) an accelerant was present in the ash sample obtained from beneath the wall partition between the recreation room and the garage; (3) plaintiffs both testified there were no flammable materials stored in and around the area from which the ash sample was taken; (4) the policy had only been in effect one month before the fire; (5) plaintiffs tried to increase the face amount of the policy shortly before the fire; (6) there was an independent eyewitness, Joseph Vereecke, who provided a physical description of a man consistent with plaintiff McCloud's physical features located at the rear of a pickup truck parked in plaintiffs' driveway immediately before the fire; (7) the pickup truck had furniture in the back and was backed up to plaintiffs' garage; (8) when Mr. Vereecke drove by the house approximately fifteen minutes later, he noticed thick, black smoke emanating from the plaintiffs' house; (9) thick, black smoke is indicative of a petroleum-based fire consistent with other evidence that an accelerant was used to start the fire; (10) the burn pattern was rapid and did not follow the normal path of a usual house fire; and (11) the only evidence that the fire was not arson nor started by the plaintiffs consisted of their testimony that they did not start the fire.

This extensive knowledge of the facts regarding the fire and its cause confirms that Columbia had a substantial basis to support its suspicions concerning plaintiffs' claim. As such, Columbia should not be penalized for insisting upon a judicial determination of its defense of plaintiffs' claim.

However, the existence of a litigable issue does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. banc 1984). Plaintiffs argue that the manner and intensity of Columbia's investigation rose to the level of vexatious and recalcitrant. Plaintiffs cite *DeWitt* for support that the evidence presented provided substantial evidence that Columbia acted vexatiously and unreasonably in handling their case. However, unlike *DeWitt* and other cases[3] involving vexatious refusal to pay where the adequacy of the investigation is questioned, here plaintiffs argue the investigation was too thorough and intensive. We find the facts of this case more similar to that of *Francka v. Fire Ins. Exchange*, 668 S.W.2d 189 (Mo.App.1984). In *Francka*, the court held that:

---

3. *See Allen v. State Farm Mut. AutoIns. Co.*, 753 S.W.2d 616, 621 (Mo.App.1988); *Laster*, 693 S.W.2d at 197; *Berry v. Federal Kemper Ins. Co.*, 621 S.W.2d 948, 954 (Mo.App.1981).

The investigations of the State Fire Marshal and defendant's investigator, at least when combined, were sufficient to give defendant a reasonably based belief that plaintiff set the fire and that items had been removed before it was started. We conclude that vexatious damages and attorney's fees should not have been submitted to the jury.

*Id.* at 190.

In the present case, there is no evidence that Columbia's refusal to pay was without reasonable cause. The defendant's investigation was thorough, as would be expected under the circumstances, especially in light of the facts which indicated arson, and its actions did not amount to vexatious behavior. In fact, the evidence, as it developed, supports Columbia's need to fully investigate plaintiffs' claim. It would not be appropriate to hold the defendant company liable because its investigation was too thorough. To the contrary, an incomplete investigation could very likely be the basis for vexatious and unreasonable refusal to pay. As a result, we hold that defendant's refusal to pay the insurance proceeds short of a judicial determination was reasonable, not vexatious and not recalcitrant.

■■■ Columbia's third point is directed to the trial court's ruling on Columbia's Motion for Directed Verdict at the Close of Plaintiffs' Evidence on Columbia's claims that the policy was void ab initio as a matter of law since plaintiffs' misrepresentations in the policy application were material. Plaintiffs made a prima facie case by showing that the policy was in force at the time of the fire and that the loss occurred. *Haynes v. Missouri Property Ins. Placement Facility*, 641 S.W.2d 497, 499 (Mo. App.1982). The burden was upon Columbia to prove that the misrepresentation was material. *Id.* Generally, the question of whether the misrepresentations in an application were material is one for the trier of fact to decide. *Weekly v. Missouri Property Ins. Placement Facility*, 538 S.W.2d 375, 378 (Mo.App.1976). However, when a misrepresentation is of such a nature that all minds would agree that it is or is not material, the question is appropriately considered to be a question of law for the court. *Continental Gas Co. v. Maxwell*, 799 S.W.2d 882, 889 (Mo.App.1990). Plaintiffs presented evidence that the omissions in the application for insurance were not material to the risk written when viewed from an industry-wide perspective. Since there was conflicting evidence on this issue, the jury was obligated to resolve this conflict. *Crewse*, 706 S.W.2d at 39. There was evidence to support the jury's determination of the factual dispute. Point denied.

■■■ Finally, Columbia contests the court's overruling Columbia's Motion to Amend Judgment to provide for a set off based on Columbia's satisfaction of the mortgage. The parties stipulated that Columbia paid the mortgage in full and took an assignment of the mortgage in the amount of $52,500. This stipulation was presented to the court ten days after the verdict was returned.

Columbia's payment should be viewed as "a purchase of the right to sue on the note" against the plaintiffs therefore replacing the bank as a substituted creditor. *Id.*, 706 S.W.2d at 42–43. As this court in *Crewse* noted, Columbia is not precluded from pursuing a separate cause of action against plaintiffs to recover the mortgage note pursuant to the terms and conditions of the mortgage note. *Id.* at 43 n. 5. As a result, Columbia has a cause of action against the plaintiffs concerning the mortgage, but has failed to properly raise the issue in the current action. Merely entering into a stipulation and presenting it to the court ten days after the verdict and judgment, and requesting a set off of the mortgage does not provide the plaintiffs an opportunity to set forth any contract defenses that may be appropriate.

The judgment of the trial court is affirmed except as to its judgment on Count II, vexatious refusal to pay and attorney fees, which is reversed. Cause is remanded for entry of a judgment in accordance with this opinion.

All concur.