279 F.Supp.2d 1060 (2003)
The EMPLOYERS FIRE INSURANCE COMPANY, now known as Onebeacon Insurance Group, Plaintiff,
v.
POWER MODEL SUPPLY COMPANY, Defendant.
No. 4:01CV784 DDN.
United States District Court, E.D. Missouri, Eastern Division.
July 3, 2003.
*1061 Russell F. Watters, Managing Principle, David W. Cooper, Brown and James, P.C., St. Louis, MO, for Plaintiff/Counter-Defendant.
Daniel A. Raniere, Aubuchon and Raniere, St. Louis, MO, for Defendant/Counter-Claimant/Third-Party Plaintiff.
*1062 Edward J. Rolwes, Rosenblum and Goldenhersh, St. Louis, MO, for Third-Party Defendants.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court upon the motion of plaintiff The Employers Fire Insurance Company for summary judgment. (Doc. 51.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on December 20, 2002. Plaintiff's motion is denied.

FACTS
The following facts are undisputed. Defendant conducted business operations as a hobby shop specializing in the sale of parts, castings, and metal works for model steam engines. Defendant retained the services of insurance broker Don Becker and Custom Insurance Services (CIS) to procure insurance coverage on its behalf. CIS acted as an insurance agent for defendant. Becker, who handled defendant's account for CIS, placed a commercial insurance policy with defendant on behalf of Fred Ellis d/b/a Power Model Supply Company (Power Model).
In 1989, Becker and CIS submitted to plaintiff, on defendant's behalf an application for a "Concept One" insurance policy. The policy was issued to defendant and was renewed annually. One provision of the policy, titled "CONCEALMENT, MISREPRESENTATION OR FRAUD," states that the policy's coverage part is void in any case of fraud by the insured as it relates to the coverage part or if the insured, at any time, intentionally conceals or misrepresents a material fact concerning, inter alia, the coverage part of the policy, the covered property, or a claim under the coverage part. (Doc. 51 (Pl.'s Ex. 7).) Another provision states that the policy contains all of the agreements between the parties as to the insurance afforded and that the policy's terms can be amended or waived only by endorsement issued by the insurer and made part of the policy.
In 1994, a second Concept One application was submitted on defendant's behalf. CIS and/or Becker filled out some information on the 1994 application based on the prior application and telephone conversations with Fred or Joan Ellis (Power Model's co-owner and vice president), and forwarded it for defendant to complete, sign, and return. Mr. Ellis signed it. The 1989 and 1994 applications, used to obtain the policy issued to Fred Ellis d/b/a Power Model, do not state that the insured must notify defendant or its agent of any change in circumstances.
Defendant's operation is described in the 1994 application as a "Hobby Shop." Questions 12 and 14 of the application ask, respectively, whether "there [are] any recreational activities conducted or permitted on the property," and whether "there [are] any premises owned, occupied or controlled by applicant or business operations conducted by applicant which are not described in this application." Boxes are checked next to those two questions, indicating answers of "no."
In November 1998, Joan Ellis notified Becker by facsimile that Fred Ellis and/or defendant intended to purchase 1000 pounds of "black power" from Hodgdon Powder Company (Hodgdon). CIS issued Hodgdon a certificate of insurance, naming Hodgdon as an additional insured on defendant's policy. The certificate was not withdrawn. There are no documents addressed to the insured from CIS or Becker advising of an additional premium in connection with the certificate, nor are there documents indicating that the insured refused an increase in premium in return for *1063 the certificate's issuance to Hodgdon. Plaintiff never issued an endorsement to the policy to add Hodgdon as an additional insured.
In September 1999, the policy, intended to insure defendant against certain risks, including loss by accidental fire, was renewed with proposed effective dates for coverage of September 10, 1999, to September 10, 2000. The policy, which states that it contains all of the agreements between the insurer and the insured, provides that fraud, intentional concealment, or misrepresentation of a material fact concerning the covered property void the policy's coverage part, and that the policy's terms can be amended or waived only by endorsement issued by plaintiff and made part of the policy. The policy does not define "increase of risk" or contain an increase-of-risk clause.
On September 2, 2000, Mr. Ellis was killed at defendant's place of business as the result of his attempt to disassemble a German military flare, which ignited, causing an explosion and a fire. Joan Ellis, on behalf of defendant, subsequently submitted a claim for property damage insurance proceeds. Plaintiff investigated.
During the investigation, Joan Ellis testified by deposition to the following. Fred Ellis stored, sold, and repaired firearms and had been doing so since before 1994, pursuant to a federal firearms license issued to him by the U.S. Bureau of Alcohol, Tobacco, and Firearms (ATF). He purchased firearms from catalogs for friends, acquaintances, and sheriff's deputies, and conducted approximately 12-15 gun purchase transactions per year. He charged, but did not always collect, a $5 transaction fee. In addition, Fred Ellis began purchasing, collecting, and selling fully automatic weapons in 1997 pursuant to his ATF license.
Joan Ellis further testified that in 1994 Mr. Ellis did not possess any black powder. Sometime after the last application for insurance was made (in 1994), he began purchasing chemicals and black powder to use in the manufacture of fireworks. He made those purchases pursuant to an ATF license issued to Power Model. After the last insurance application was made, he also began conducting periodic private fireworks displays on the insured property.
At the time of the explosion and fire, the items present on the insured premised included, in part, a fully operational military flame thrower, a non-operational hand grenade and military mortar, 10 machine guns, 10 to 20 rifles, more than 20 handguns, approximately 200 flare guns, flares, at least 14 cases of ammunition, and 8 to 12 pounds of black powder.
After the investigation was conducted, plaintiff's property claims supervisor, Jerry Becherer, sent a letter to defendant denying the claim, because defendant
knowingly and intentionally increased the risk of loss at the insured premises by conducting (1) the undisclosed business of sales and repair of firearms, including fully automatic weapons; (2) the undisclosed business of manufacture, storage and sales of fireworks; (3) the undisclosed storage of fireworks component chemicals and explosives in bulk; (4) the undisclosed business of sales of explosives in bulk; and (5) undisclosed recreational activities on the insured property involving fireworks displays.
(Doc. 51 Pl.'s Ex. 13.) The letter also stated that at least one manner in which the risk of loss was increased was a contributing cause to the fire; that insured concealed or misrepresented material facts and circumstances regarding the increased risks of loss at the insured premises; that such concealment or misrepresentation was material to the hazard rating and premium calculation; and that defendant made false statements during the investigation *1064 regarding the business of Power Model, particularly with respect to fireworks. The letter further stated that defendant breached the "CONCEALMENT, MISREPRESENTATION OR FRAUD" portion of the policy and that one manner in which the risk of loss at the insured premises was increased was through the manufacturing, storage, and sales of fireworks, as well as the storage of component chemicals and explosives in bulk. Finally, the letter advised that plaintiff was reserving any and all additional rights and defenses under the policy and Missouri law and that no action taken by its employees should be considered to be a waiver of any said right and defense. (Id.) Becherer testified that at the time the letter was issued, he did not contend the insured did anything to void the insurance policy before 1996-1997.
On May 18, 2001, plaintiff commenced this action for a declaratory judgment, and on November 27 amended its complaint. (Docs. 1, 20.) The parties have stipulated that the damages in the case amount to $202,100. (Doc. 51 (Joint Statement) at 10.)

THE PARTIES' POSITIONS
In its motion for summary judgment, plaintiff first argues that the insurance policy is void ab initio for misrepresenting facts in the 1994 application. Specifically, plaintiff argues that defendant failed to disclose additional recreational or business activities that were being conducted on the insured property. Plaintiff notes there is evidence that in addition to operating a hobby shop, defendant manufactured, stored, and/or sold weapons, explosives, fireworks, and flares, and conducted fireworks displays, on the property. Such activities, plaintiff asserts, are clearly outside the scope of a hobby shop. Plaintiff characterizes Joan Ellis's deposition testimony as an admission that, when the 1994 application was submitted, defendant was engaged in the undisclosed business of storing and selling guns. Next, plaintiff notes that the 1994 application, signed by Fred Ellis, indicates there were no other business pursuits or recreational activities on the property.
The misrepresentations were material as a matter of law, plaintiff maintains, because (1) the above-mentioned activities did not fall within the underwriting guidelines of a Concept One policy, (2) the undisclosed activities materially increased the risk to plaintiff in that the alleged loss resulted directly from one of the undisclosed activities, and (3) such a risk would have been written, if at all, on a different type of policy carrying significantly higher premiums. Plaintiff relies on a Concept One agent's guide; deposition testimony of Susan Marty, who underwrote defendant's account; and an affidavit from Jay Angoff, an attorney with insurance experience.
Second, plaintiff argues that, even if defendant's additional activities began after the 1994 application, the policy would still be void, because the undisclosed business and recreational activities were within defendant's control, materially increased the risk of loss, and one or more of the activities caused or contributed to the loss. Plaintiff states that, had it been aware of the increase in risk, it would have terminated the policy and refused to insure the risk. Relying on Marty's deposition, the Concept One agent's guide, and Angoff's affidavit, plaintiff states that the type of activity at issue could only have been issued on a surplus line policy at a higher premium.
Defendant responds that plaintiff is not entitled to declare its policy void. First, defendant argues that any activities involving fireworks or explosives did not begin until after 1994 and could not have been misrepresented or concealed in the 1994 application. Specifically, defendant maintains *1065 that it did not become engaged in fireworks or explosives activities until 1997, after approval for a license to manufacture low-level explosives.
Second, defendant argues that, because there was no intent to deceive plaintiff, defendant did not fraudulently misrepresent or conceal firearms activities in the 1994 application. Defendant refers to Becker's deposition: Becker declined having any information that Fred or Joan Ellis intentionally and knowingly wanted to hide the business of firearm sales and repair.[1] Defendant submits the fact that it contacted Becker and informed him that it was purchasing 1000 pounds of black powder shows that defendant acted without intent to deceive plaintiff.
Third, defendant argues that it did not materially misrepresent firearms activities in the 1994 application. Regarding its "no" answer to Question 14, defendant maintains that it did not make any representation about firearms, because neither the application, plaintiff, nor "Plaintiff's agent, Don Becker/Custom Insurance," asked about firearms at the time the insurance application was being completed (in 1994). Defendant relies on an affidavit from Cyril J. Furrer, Jr., a licensed insurance broker and underwriter. (Doc. 51 (Def.'s Ex. C).) Furrer averred that Mr. Ellis did not provide any false information in the 1994 application nor did he fail to provide information that was material to the risk to be insured. He also averred, based on his underwriting experience, that plaintiff would not have rejected the risk, declined to issue the policy, or charged a substantially higher premium, if it had known the extent of Mr. Ellis's firearm activity at the time of the 1994 application.
Defendant contends that it was not reasonable to expect defendant to have surmised that plaintiff, through questions about "business operations," was seeking information about Mr. Ellis's firearm hobby or trying to find out if firearms were on the premises for underwriting purposes. Defendant maintains plaintiff's position, at best, presents a jury question. Moreover, defendant, citing Priesmeyer v. Shelter Mut. Ins. Co., 995 S.W.2d 41, 45 (Mo.Ct. App.1999), maintains that an issue of fact exists over who completed the questions at issue in the 1994 application, given that CIS and/or Becker filled out some information and that Becker stated that someone from his office probably answered Question 14.
The "no" answer to Question 14 was not false, defendant argues, because Mr. Ellis's firearm activity was not a "business operation" of defendant, but rather a hobby of Mr. Ellis. Defendant points to evidence that Mr. Ellis (1) was a member of an antique arms collectors' club, (2) only sold the firearms to his friends or police officers, (3) sold the firearms to keep his license effective, (4) transacted 12 to 15 sales per year, and (5) charged only $5 per sale, if he charged at all. Defendant adds that the firearms license was issued to Mr. Ellis, not to Power Model; that Power Model was the applicant for the insurance policy; and that a separate tax number under Mr. Ellis's name was used for gun sales.
Defendant adds that, although plaintiff's summary judgment motion refers to Question 12, plaintiff does not contend that defendant engaged in recreational activities in 1994. According to defendant, the only recreational activities cited by plaintiff involved fireworks and fireworks displays, which did not begin until 1997.
Next, defendant states that any alleged misrepresentation regarding firearms was *1066 not material, because the event causing the policy to become due was an explosion and fire that occurred while Mr. Ellis was disassembling a flare.
Finally, defendant argues that the policy did not impose upon defendant a duty, express or implied, to notify plaintiff of changes in activities after the 1994 application, and that there is a factual issue as to whether defendant did in fact notify plaintiff of changes in activities by notifying Becker that it wanted additional coverage to purchase black powder.
Plaintiff replies that Fred Ellis, in applying for the ATF license, represented that defendant would serve as a storefront operation and maintain normal business hours for the purpose of the sales of guns and that the endeavor was intended to be a business for profit. Even if the gun sales did not constitute a business, plaintiff states that the sales constituted a hobby, i.e., a recreational activity.
Next, plaintiff argues that the misrepresentations were material, because, even if a policy could have been written, the premium would have been significantly higher. Plaintiff also argues that the policy is void because after the 1994 application defendant engaged in additional activities on the premises, e.g., the sale of fully automatic weapons, that defendant did not disclose the activities to plaintiff or Becker, and that they materially increased the risk.

DISCUSSION

A. Summary judgment standard
A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law. Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir.), cert. denied, 522 U.S. 816, 118 S.Ct. 64, 139 L.Ed.2d 26 (1997). "In deciding whether there is a genuine issue of material fact, the court must view all evidence in the light most favorable to the non-moving party and must give that party the benefit of all justifiable inferences." Jenkins v. S. Farm Bureau Cas., 307 F.3d 741, 743 (8th Cir.2002).

B. Misrepresentation
Under Missouri law,
an insurance company [generally] may avoid an insurance policy for a fraudulent misrepresentation or a material misrepresentation in the application.... To prove a fraudulent misrepresentation, the insurer must demonstrate that the insured made a false statement with the intent to deceive the insurance company.... Alternatively, to prove a material misrepresentation, the insurer must demonstrate that the representation in the application was material and false when (1) the representation was warranted to be true, (2) the policy was conditioned upon its truth, (3) the policy provided that its falsity will avoid the policy, or (4) the application was incorporated into and attached to the policy.... A misrepresentation of fact is deemed material if the fact, stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium.... The standard is whether a reasonable person should have expected that the misrepresentation within the insurance application would influence the insurance company's decision to accept the risk and issue the policy and in determining the premium to chargenot whether the misrepresentation actually influenced the insurer.
Cent. Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222, 225 (Mo. *1067 Ct.App.1998) (citations and footnote omitted). Generally, whether a misrepresentation in an application is material is a question for the trier of fact, but, when a misrepresentation is of such a nature that all minds would agree that it is or is not material, the question is appropriately considered to be a question of law for the court. Priesmeyer, 995 S.W.2d 41, 45.
Plaintiff's motion for summary judgment suggests that defendant did not disclose in the 1994 application that certain activities were being conducted on its property. Despite plaintiff's suggestion to the contrary, there is no evidence that prior to the 1994 application fireworks or explosives activities were occurring on the premises. It is undisputed, however, that Fred Ellis had been selling, storing, and repairing firearms on the property since before 1994, and that such activities were not indicated on the 1994 application. The threshold issue before the court is whether the negative answers to Questions 12 and 14 (regarding recreational activities and other business operations) on the 1994 application constitute a material misrepresentation.[2]
The instant case fits into the general rule regarding materiality, given that all minds are not in agreement: each party has offered evidence by way of an underwriter; and each underwriter reached a different conclusion. See Mears v. Columbia Mut. Ins. Co., 855 S.W.2d 389, 395 (Mo.Ct.App.1993) (since there was conflicting evidence on the issue of materiality a jury was necessary to resolve this conflict); see also Adams v. Columbia Mut. Ins. Co., 978 S.W.2d 10, 11-12 (Mo.Ct.App.1998); Galvan v. Cameron Mut. Ins., 733 S.W.2d 771, 773 (Mo.Ct.App.1987). Thus, a genuine issue of material fact exists over the misrepresentation issue.

C. Material alteration of risk
If insurance policy language is unclear or ambiguous, then it must be construed against insurer. Perry State Bank v. Farmers Alliance Mut. Ins. Co., 953 S.W.2d 155, 157 (Mo.Ct.App.1997). Plaintiff's policywhich contains a provision stating that all of the agreements between the parties are contained in the policy does not contain any language advising the insured of a duty to inform plaintiff of any changes in its activities that increase the risk or hazard. Although Missouri courts regularly enforce increase-of-risk or increase-of-hazard clauses in insurance contracts, the only supporting Missouri case cited by plaintiff, Calvert v. Safeco Ins. Co. of Am., 660 S.W.2d 265, 268 (Mo.Ct.App. 1983), involves a policy with an express increase-of-hazard clause. Moreover, this court is unaware of any insurance cases in Missouri applying an increase-of-risk or increase-of-hazard analysis in a situation where the policy does not address such an increase. See 1 Eric Holmes, Holmes's Appleman on Insurance 2D § 4.31, at 550-51 (1996) ("Such clauses of forfeiture in an insurance policy must be explicit.").
In any event, "[i]t is well established under Missouri law that an insurer may, by its conduct, waive defenses which are otherwise available under a policy." Id. Although plaintiff argues that, had it known of the additional activities occurring on defendant's premises, it would have declined to issue a policy at all or would have issued a policy at a substantially higher premium, defendant has provided evidence that Ms. Ellis notified Becker about defendant's intent to purchase 1000 pounds of *1068 black powder and that CIS issued a certificate of insurance for the purchase.
Under Missouri law, an insurance broker generally is the agent of the insured not the insurer. Schimmel Fur Co. v. Am. Indemn. Co., 440 S.W.2d 932, 938 (Mo.1969). Whether as to a given matter the broker is the agent of the insured or the insurer depends upon the circumstances. Travelers Indem. Co. v. Beaty, 523 S.W.2d 534, 538 (Mo.Ct.App. 1975). A broker, however, is presumed to be an agent of the insured unless some special conditions or circumstances indicate that the opposite is true. Secura Ins. Co. v. J.R. Saunders, 227 F.3d 1077, 1080 (8th Cir.2000). An exception to the presumption occurs in that "[o]ne who has the authority to take and complete applications for insurance is the agent of the insurer and not of the insured." Am. Fire & Indem. Co. v. Lancaster, 286 F.Supp. 1011, 1014 (E.D.Mo.1968) (citing Missouri state court cases). In this case the record permits an inference of an agency relationship between plaintiff and CIS (and Becker). Consequently, Becker's knowledge might be imputed to plaintiff, see Am. Fire & Indemn. Co. v. Lancaster, 415 F.2d 1145, 1149 (8th Cir.1969), and a genuine issue of material facts exists as to whether plaintiff has waived its increase-of-risk defense.[3]
Accordingly, plaintiff's motion for summary judgment (Doc. 51) is denied. An appropriate order is issued herewith.
NOTES
[1] Defendant also points to page 52 of Becherer's deposition; however, that page does not appear to be among the pages included in either party's exhibits.
[2] Plaintiff does not argue that it may avoid the policy on the basis of fraudulent misrepresentation. Moreover, plaintiff has not offered any evidence reflecting defendant's state of mind. As noted above, see Cent. Bank of Lake of the Ozarks, 975 S.W.2d at 225, the insured's state mind, i.e., "intent to deceive," is an element of fraudulent misrepresentation.
[3] The court recognizes that the parties's joint statement of uncontroverted material facts indicates that CIS acted as defendant's insurance agent; however, the joint statement does not change the law that a broker may be the agent of the insurer for some purposes and the agent of the insured for others. See Electro Battery Mfg. Co. v. Commercial Union Ins. Co., 762 F.Supp. 844, 848 (E.D.Mo.1991); Diplomat Homes, Inc. v. Commercial Standard Ins. Co., 394 F.Supp. 558, 565 (W.D.Mo.1975) (fact that insurance broker acted on insured's behalf in regard to some of the matters involved in the case does not mean that he did not act as insurer's agent in regard to the case's controlling factual circumstances).